**ARMADILLO BAIL BONDS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 1049–89.**

Court of Criminal Appeals of Texas,
En Banc.

Dec. 5, 1990.

Rehearing Overruled Jan. 23, 1991.

---

1. Tex.R.App.P. 170.

G.P. (Pat) Monks, Houston, Randy Adler, Dallas, for appellant.

John Vance, Dist. Atty., and Alec B. Stevenson, III and Michael J. Watts, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

CAMPBELL, Judge.

In this criminal bail bond forfeiture case, we granted Armadillo Bail Bonds' petition for discretionary review, pursuant to Texas Rule of Appellate Procedure 200(c)(4), in order to determine whether Article 22.-16(c)(2) of the Texas Code of Criminal Procedure violates the separation of powers provision of the Texas Constitution. See Tex. Const. art. 2, § 1. Having found the statute unconstitutional, we will affirm the judgment of the court of appeals.

Alejandro de Jesus Carreon, charged in Dallas County with a felony, failed to appear for trial on November 19, 1987. On that date the trial court rendered judgment *nisi* for the State and against de Jesus Carreon and his surety, Armadillo Bail Bonds, jointly and severally, in the amount of de Jesus Carreon's bond. Nine months later, on August 15, 1988, at a hearing before the trial court, Armadillo was given an opportunity to show good cause for de Jesus Carreon's failure to appear for trial. No such cause was shown, and the judgment of forfeiture was made final the next day. Armadillo then moved for a new trial on the basis of Tex.Code Crim.Pro. art. 22.16(c)(2), which provides that "[a] final judgment may be entered against a bond not earlier than ... 18 months after the date the forfeiture was entered, if the offense for which the bond was given is a felony." Armadillo's motion for new trial was denied, and the Fifth Court of Appeals affirmed on the ground that Article 22.-16(c)(2) is invalid under the Texas Constitution's separation of powers provision. *Armadillo Bail Bonds v. State,* 772 S.W.2d 193 (Tex.App.—Dallas 1989).

In its petition for discretionary review, Armadillo contends that Article 22.16(c)(2) "is a valid enactment of law to regulate the trial court's ... power to grant [a] certain type of relief, a final judgment." Appellant's Brief at 18. Armadillo argues further that the statute is constitutional because it "does not prevent the courts from managing their affairs ...; it only controls the type of relief a court can grant at certain times." Appellant's Brief at 12. The State responds that "[b]y ordering trial courts not to enter bond forfeiture judgments until the expiration of ... eighteen months in a felony case, ..., the legislature is usurping a judicial function. This is certainly violative of [the separation of powers provision] of the Texas Constitution." State's Brief at 7.

A proper understanding of the issue presented requires an examination of the complete text of Article 22.16(a) and (c):

(a) After forfeiture of a bond and *before the expiration of the time limits set by Subsection (c) of this article, the court shall, on written motion, remit to the surety the amount of the bond* after deducting the costs of court, any reasonable costs to the county for the return of the principal, and the interest accrued on the bond amount ... if:

(1) the principal is incarcerated in the county in which the prosecution is pending;

(2) the principal is incarcerated in another jurisdiction and the incarceration is verified ...;

(3) the principal is released on new bail in the case;

(4) the principal is deceased; or

(5) the case for which bond was given is dismissed.

\*    \*    \*    \*    \*    \*

(c) *A final judgment may be entered against a bond not earlier than:*

(1) nine months after the date the forfeiture was entered, if the offense for which the bond was given is a misdemeanor; or

(2) *18 months after the date the forfeiture was entered, if the offense for which the bond was given is a felony.*

(Emphasis added.)

It seems probable that Article 22.16(c), enacted in 1987, resulted from our decision in *Williams v. State*, 707 S.W.2d 40 (Tex. Cr.App.1986).[1] In *Williams* we held unconstitutional a statute that entitled the surety to an automatic ninety-five percent remittitur if the defendant appeared within two years after a final judgment and the surety claimed responsibility for the return. We concluded that the automatic remittitur provision impermissibly interfered with judicial power by requiring the modification of a final judgment. It appears the Legislature has tried to circumvent the *Williams* holding by denying the courts the authority to render a final judgment for a set period of time.

Article 2, § 1 of the Texas Constitution provides:

The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one, those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.

This separation of powers provision reflects a belief on the part of those who drafted and adopted our state constitution that one of the greatest threats to liberty is the accumulation of excessive power in a single branch of government. The provision also has the incidental effect of promoting effective government by assigning functions to the branches that are best suited to discharge them. *See* H. Bruff, *Separation of Powers Under the Texas Constitution,* 68 Texas L.Rev. 1337, 1341 (1990).

■ We have held repeatedly that the separation of powers provision may be violated in either of two ways. First, it is violated when one branch of government assumes, or is delegated, *to whatever degree,* a power that is more "properly attached" to another branch. *Ex parte Giles,* 502 S.W.2d 774, 780 (Tex.Cr.App. 1973). The provision is also violated when one branch *unduly* interferes with another branch so that the other branch cannot *effectively* exercise its constitutionally assigned powers. *Rose v. State,* 752 S.W.2d 529, 535 (Tex.Cr.App.1987); *Meshell v. State,* 739 S.W.2d 246, 252 (Tex.Cr.App. 1987); see 16 C.J.S. *Constitutional Law* § 112 (1984). The undue interference test

takes the middle ground between those who would seek rigid compartmentalization and those who would find no separation of powers violation until one branch completely disrupted another branch's ability to function. The rigid compartmentalization theory undermines the efficiency of government and undervalues the availability of checks and balances. The other extreme looks only for the completed coup and underestimates the incremental effect of interbranch intrusions.

N. McCabe, *Four Faces of State Constitutional Separation of Powers: Challenges to Speedy Trial and Speedy Disposition Provisions,* 62 Temple L.Rev. 177, 218 (1989).

The State argues, and the court of appeals held in effect, that Article 22.16(c)(2) unduly interferes with the courts' exercise of the "judicial" power. Our inquiry must begin, then, with the nature of this power and the extent to which the Legislature may inject itself into this arena.

■ The Texas Constitution explicitly vests the judicial power of the state in the courts. Tex. Const. art. 5, § 1. The core of this judicial power embraces the power (1) to hear evidence; (2) to decide the issues

1. See Senate Comm. on Crim.Juris., Bill Analysis, Tex.S.B. 185, 70th Leg., R.S. (1987) (discussing *Williams v. State,* 707 S.W.2d 40 (Tex.Cr. App.1986)).

of fact raised by the pleadings; (3) to decide the relevant questions of law; (4) *to enter a final judgment on the facts and the law;* and (5) to execute the final judgment or sentence. *Kelley v. State,* 676 S.W.2d 104, 107 (Tex.Cr.App.1984). On the other hand, the constitution explicitly grants the Legislature ultimate authority over judicial "administration," Tex. Const. art. 5, § 31; *Meshell v. State,* 739 S.W.2d at 255, although this authority does not permit the Legislature "to infringe upon the substantive power of the Judicial department under the guise of establishing 'rules of court,' thus rendering the separation of powers doctrine meaningless." *Meshell v. State,* 739 S.W.2d at 255. Given these constitutional provisions, it is no simple task to determine whether any given legislative action that affects the exercise of judicial power is a violation of the separation of powers provision.

Helpful to our inquiry in this case, we believe, is the Montana Supreme Court's decision in *Coate v. Omholt,* 203 Mont. 488, 662 P.2d 591 (1983). There, the court held unconstitutional, as violations of the separation of powers principle, two Montana statutes that placed time limits on district and supreme court cases and imposed financial sanctions on judges for failure to comply. Although the facts of *Omholt* are different from those in the case before us today, we believe the reasoning of the decision is instructive and sound:

> ... We conclude that, based on the separation of powers clause of our state constitution, the question of when cases shall be decided and the manner in which they shall be decided, is a matter solely for the judicial branch of government.
>
> \* \* \* \* \* \*
>
> By [the separation of powers] provision, each branch of government is made equal, coordinate, and independent. By this we do not mean absolute independence because "absolute independence" cannot exist in our form of government. It does mean, however, "... that the powers properly belonging to one department shall not be exercised by either of the others." With only one exception

(*State ex rel. Emerald People's Util. v. Joseph* (Ore.1982), 292 Or. 357, 640 P.2d 1011), the supreme courts of those states called on to answer the question have declared that the essential nature of a constitutional court encompasses the right to determine when a judicial decision will be made.

These holdings are best summarized in a law review article entitled, Legislative Control Over Judicial Rule–Making: A Problem in Constitutional Revision (1958), 107 U.Pa.L.Rev. 1, 31–32:

> "What the holdings do suggest is that there is a third realm of judicial activity, neither substantive nor adjective law, a realm of 'proceedings which are so vital to the efficient functioning of a court as to be beyond legislative power.' This is the area of minimum functional integrity of the courts, 'what is essential to the existence, dignity and functions of the court as a constitutional tribunal and from the very fact that it is a court.' Any statute which moves so far into this realm of judicial affairs as to dictate to a judge how he shall judge or how he shall comport himself in judging or which seeks to surround the act of judging with hampering conditions clearly offends the constitutional scheme of the separation of powers and will be held invalid."

The courts have recognized, as the authors state, that certain judicial functions require that the courts alone determine how those functions are to be exercised. Even assuming the right under many state constitutions, and indeed, the need for the legislature to be involved in rule-making where the courts and the legislature have concurrent rule-making power, the authors state:

> "Grant the necessity for concurrent jurisdiction in the field of procedure, immediately another problem presents itself. Should there not be some realm of judicial administration entirely free from legislative supervision? Or shall the legislature be permitted to dictate to the courts every detail of their internal regimen: command appellate courts to issue written opinions in every case, declare within what time cases shall be heard,

deny to the court the power to issue its mandate until a prescribed period of time after judgment shall have passed? *There are spheres of activity so fundamental and so necessary to a court, so inherent in its very nature as a court, that to divest it of its absolute command within these spheres is to make meaningless the very phrase judicial power.*" 107 U.Pa.L.Rev. at 29–30. 662 P.2d at 594 (emphasis in original; some citations omitted). See also *Sands v. Albert Pike Motor Hotel,* 245 Ark. 755, 434 S.W.2d 288 (1968); *Holliman v. State,* 175 Ga. 232, 165 S.E. 11 (1932); *Waite v. Burgess,* 69 Nev. 230, 245 P.2d 994 (1952); *Schario v. State,* 105 Ohio St. 535, 138 N.E. 63 (1922); *Complaint Against Grady,* 118 Wis.2d 762, 348 N.W.2d 559 (1984) (all cases holding legislature may not dictate to judiciary when or how cases shall be decided).

 Article 22.16(c)(2) requires that the Judiciary refrain from exercising a part of its core power for a period of a year and a half. If this requirement is, as Armadillo argues, a valid exercise of the Legislature's power over judicial administration, then, as the court of appeals noted, "nothing prevents the legislature from imposing an *interminable* delay in obtaining final judgment." 772 S.W.2d at 197 (emphasis added). In other words, if Article 22.16(c)(2) is valid, then the Legislature has the power to render the Judiciary impotent with respect to the entry of final judgments.

We adhere to our holdings in *Meshell* and *Williams* that the Legislature may not unduly interfere with the judicial function under the guise of establishing rules of court. We also agree with the *Omholt* court's reasoning that the separation of powers principle necessarily contemplates a zone of judicial power which must be free of legislative interference.[2] The question in each case is whether the legislation in issue is grounded on the Legislature's own

constitutionally assigned power and, if so, whether the legislation nevertheless unduly interferes, or threatens to unduly interfere, with the Judiciary's effective exercise of *its* constitutionally assigned power, and we so hold.

In our view, Article 22.16(c)(2) unduly interferes with the Judiciary's effective exercise of its constitutionally assigned power. We hold, therefore, that the statute is invalid under Article 2, § 1 of the Texas Constitution. The judgment of the court of appeals is affirmed.

TEAGUE and MILLER, JJ., dissent.

STURNS, J., not participating.

---

2. We should not be understood to approve the court of appeals' sweeping statement that "a statute which requires the judicial branch to act or refrain from acting within a specified time is [always] unconstitutional as an unwarranted encroachment by the legislative branch upon the

prerogatives and functions of the judiciary." 772 S.W.2d at 196. There are many instances where the Legislature may pass legislation that affects in some way how or when judicial power may be exercised.