The STATE of Texas, Appellant,

v.

Michael James WILLIAMS, a.k.a. Dennis Lee Williams, Appellee.

No. 476–96.

Court of Criminal Appeals of Texas.

Feb. 5, 1997.

---

Jimmy Phillips, Angleton, for appellant.

Jerome Aldrich, District Attorney, David Bosserman, Assist. District Attorney, Angleton, Matthew Paul, State's Atty., Austin, for the State.

### OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

KELLER, Judge.

We granted the State's petition to determine whether subsections Article IV(c) and Article V(c) of the Interstate Agreement on Detainers Act (IADA)[1] violate the Separation of Powers clause of the Texas Constitution. The trial court dismissed indictments, with prejudice, against appellee pursuant to the IADA, Article V(c)[2] because trial was not

---

1. The IADA is codified in Texas at Texas Code of Criminal Procedure, Article 51.14.

2. Article V(c) provides:

If the appropriate authority shall refuse or fail to accept temporary custody of said person, or in the event that an action on the indictment, information, or complaint on the basis of

commenced within 120 days of appellee's arrival in Texas as required by IADA, Article IV(c).[3] Before the Court of Appeals, the State challenged the provisions in question on the ground that they violated the Separation of Powers clause of the Texas Constitution. The Court of Appeals affirmed, holding that the provisions did not violate the Separation of Powers clause. We will affirm the judgment of the Court of Appeals.

The Separation of Powers Clause provides as follows:

> The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one, those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.

Texas Constitution, Article II § 1. The State argues that the speedy trial/dismissal provisions of the IADA violate separation of powers by interfering with exclusive duties belonging to the trial judge and the prosecutor. We have recognized that separation of powers may be violated in either of two ways: (1) "when one branch of government assumes, or is delegated, to whatever degree, a power that is more 'properly attached' to another branch," and (2) "when one branch unduly interferes with another branch so that the other branch cannot effectively exercise its constitutionally assigned powers." *Armadillo Bail Bonds v. State*, 802 S.W.2d 237, 239

(Tex.Crim.App.1990). *See also Jones v. State*, 803 S.W.2d 712, 715 (Tex.Crim.App. 1991). In the present case, we are not concerned with the exercise by the Legislature of a power belonging to another branch of government. The question presented here is whether the relevant provisions of the IADA unduly interfere with the trial court's and the prosecutor's effective exercise of their constitutionally assigned powers.

## 1. Trial court

The State first contends that the relevant provisions interfere with the trial court's "exclusive discretion" in setting criminal cases for trial by requiring the trial court to juggle its docket around IADA cases or risk dismissal. In support of its contention, the State relies upon *Armadillo Bail Bonds* and *State v. Matyastik*, 811 S.W.2d 102 (Tex. Crim.App.1991). Both cases held that the Legislature unduly interfered with a trial court's exercise of judicial power by requiring it to refrain from entering a final judgment on a forfeited bail bond for a certain period of time. *See generally Armadillo Bail Bonds* and *Matyastik*. The State's reliance upon these cases is misplaced.[4]

■ In *Armadillo Bail Bonds*, we held that the Constitution conferred upon trial courts the judicial power of the state. 802 S.W.2d at 239 (citing Texas Constitution, Article V § 1).[5] We explained that the core of this judicial power included: "the power (1) to hear evidence; (2) to decide issues of fact raised by the pleadings; (3) to decide relevant questions of law; (4) to enter a final judgment on the facts and the law; and (5) to

---

which the detainer has been lodged is not brought to trial within the period provided in Article III or Article IV hereof, the appropriate court of the jurisdiction where the indictment, information, or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect.

**3.** Article IV(c) provides:

In respect of any proceeding made possible by this article, trial shall be commenced within 120 days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the

matter may grant any reasonable or necessary continuance.

**4.** Because *Matyastik* relies entirely upon the holding and reasoning in *Armadillo Bail Bonds*, *Matyastik*, 811 S.W.2d at 104, our discussion of the latter applies equally to the former.

**5.** Article V § 1 provides in relevant part:

The judicial power of this State shall be vested in one Supreme Court, in one Court of Criminal Appeals, in Courts of Appeals, in District Courts, in County Courts, in Commissioners Courts, in Courts of Justices of the Peace, and in such other courts as may be provided by law.

execute the final judgment or sentence." *Id.* at 239–40. We note that the priority of litigants on a court's docket does not appear in this list. While the list is not necessarily exclusive, we have also explained that the Constitution "expressly grants the Legislature ultimate authority over judicial 'administration.'" *Id.* at 240 (citing Texas Constitution, Article V § 31(a));[6] *Meshell v. State,* 739 S.W.2d 246, 255 (Tex.Crim.App.1987)(interpreting former Article V § 25, which was predecessor to § 31 and contained similar wording). This express grant exempts legislative enactments regarding judicial administration from the proscriptions contained in the Separation of Powers clause. *See* Texas Constitution, Article II § 1 (one branch may exercise powers properly attaching to another branch "in the instances herein expressly permitted" by the Constitution).

 Although the power to regulate the administration of the courts does not permit legislative encroachment on substantive judicial powers, *Armadillo Bail Bonds,* 802 S.W.2d at 240, we believe that the priority of various litigants on a court's docket is properly characterized as mere administration. In *Ex parte Davis,* No. 72,247, slip op., —— S.W.2d ——, 1996 WL 277335 (Tex.Crim. App., delivered December 18, 1996), we held that legislative regulation of successive writs did not interfere with core judicial functions. *Id.,* five-judge concurring opinion of McCormick, J., at 6–7, —— S.W.2d at —— ——. Limitations on the regulation of the priority given to litigants on a trial court's docket is similar in nature to legislative regulation of successive writs of habeas corpus. Both situations regulate when a party may prosecute an action in the courts.

 Moreover, even if the regulation of a trial court's docket were a substantive judicial power, the IADA does not infringe upon it. The Act does not require that the trial court place IADA defendants in a priority position on the docket; it merely requires a dismissal of the prosecution from the docket, with prejudice, if the Act's time limits are not met. The State's position, in essence,

amounts to an argument that the IADA *constructively* regulates the trial court's docket by imposing the sanction of dismissal if certain actions with regard to IADA defendants are not taken. Such an argument is tenuous at best. Whether a case is dismissed is not, in general, a constitutional concern of the trial court. We have held that the trial court possesses no general authority to dismiss cases without the prosecutor's consent. *State v. Johnson,* 821 S.W.2d 609, 612–13 (Tex.Crim.App.1991); *State v. Anderson,* 119 Tex. 110, 26 S.W.2d 174, 178 (Com.App.1930). We have also stated that, while the trial court does possess authority to prevent the dismissal of a case by the prosecutor, such authority is derived solely from statute. *Anderson,* 26 S.W.2d at 178; *see* Texas Code of Criminal Procedure, Article 32.02. Because the Constitution does not confer upon the trial court the general ability to maintain its docket by causing or preventing the dismissal of prosecutions, it would be unfitting to hold that the threat of dismissal creates a separation of powers violation based upon the infringement of a trial court's constitutional power, where no such infringement would otherwise exist. We conclude that the speedy trial/dismissal provisions contained in the IADA do not infringe upon constitutional powers of the trial court.

### 2. Prosecutor

The State next contends that the speedy trial/dismissal provisions of the IADA interfere with the prosecutor's right to exercise judgment and discretion in prosecuting a criminal action. The State relies upon *Meshell,* which held that the Speedy Trial Act, Texas Code of Criminal Procedure, Article 32A.02, violated separation of powers by unduly interfering with the prosecutor's discretion in preparing criminal cases for trial. *See Meshell,* generally. Unlike the Speedy Trial Act, however, dismissal under the IADA turns upon the failure to commence trial rather than the failure of the prosecutor to be "prepared" for trial. The State argues

---

**6.** Article V § 31(a) provides:

The Supreme Court is responsible for the efficient administration of the judicial branch and shall promulgate rules of administration *not*

inconsistent with the laws of the state as may be necessary for the efficient and uniform administration of justice in various courts.

(Emphasis added).

that this difference does not defeat its claim because requiring commencement of a trial imposes even more burdens on the prosecutor than requiring mere preparedness. But in *Meshell,* we indicated that requiring mere preparedness posed greater separation of powers problems than requiring commencement of trial because requiring preparedness was less likely to effectively implement the constitutional right to a speedy trial. 739 S.W.2d at 256–57. Nevertheless, we shall assume, without deciding, that requiring commencement of a trial intrudes as much on prosecutorial discretion as requiring preparedness. There is yet another difference between the IADA and the Speedy Trial Act that we find dispositive.

■ Unlike the Speedy Trial Act, the IADA is a compact between different states. The IADA enables a party state to obtain custody of an out-of-state prisoner for prosecution, and in exchange, imposes some duties upon that state to ensure that the prisoner is quickly returned. This arrangement is thus contractual in nature, and the prosecuting authorities submit to this contract when they obtain a prisoner through the IADA. Prosecutors can, of course, bind themselves to at least some types of contractual agreements. For example, plea bargains are contractual in nature, and specific performance may be mandated if the prosecutor breaks the agreement. *Gibson v. State,* 803 S.W.2d 316, 318 (Tex.Crim.App.1991). The relevant question, then, is whether the Separation of Powers clause prevents a prosecutor from contractually relinquishing some of his prosecutorial discretion on the ground that doing so would unduly interfere with the exercise of constitutionally assigned powers.

■ Enforcement of some contracts may be precluded on the ground of public policy. The Texas Supreme Court has applied the public policy doctrine found in Restatement Second of Contracts. *DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670, 681–82 (Tex.1990); *Beck v. Beck,* 814 S.W.2d 745, 748–49 (Tex.1991). The general public policy section in the Restatement provides as follows:

§ 178 When a Term Is Unenforceable on Grounds of Public Policy

(1) A promise or other term of an agreement is unenforceable on grounds of public policy if legislation provides that it is unenforceable or the interest in its enforcement is clearly outweighed in the circumstances by a public policy against the enforcement of such terms.

(2) In weighing the interest in the enforcement of a term, account is taken of

(a) the parties' justified expectations,

(b) any forfeiture that would result if enforcement were denied, and

(c) any special public interest in the enforcement of the particular term.

(3) In weighing a public policy against enforcement of a term, account is taken of

(a) the strength of that policy as manifested by legislation or judicial decisions,

(b) the likelihood that a refusal to enforce the term will further that policy,

(c) the seriousness of any misconduct involved and the extent to which it was deliberate, and

(d) the directness of the connection between that misconduct and the term.

Restatement Second of Contracts § 178. The term "legislation" in § 178(1) includes constitutions. § 178, comment a. Moreover, "legislation" may create relevant public policy concerns although it contains no explicit proscription against the enforceability of a particular contractual provision. § 178, comment b.

■ § 178 is a balancing of interests approach to whether a particular contractual provision should be denied enforcement. We find this approach to be consonant with our undue interference test under the separation of powers doctrine:

The undue interference test "takes the middle ground between those who would seek rigid compartmentalization and those who would find no separation of powers violation until one branch completely disrupted another branch's ability to function. The rigid compartmentalization theory undermines the efficiency of government and undervalues the availability of checks and

balances. The other extreme looks only for the completed coup and underestimates the incremental effect of interbranch intrusions."

*Armadillo Bail Bonds,* 802 S.W.2d at 239 (quoting N. McCabe *Four Faces of State Constitutional Separation of Powers: Challenges to Speedy Trial and Speedy Disposition Provisions,* 62 Temple L.Rev. 177, 218 (1989)). Therefore, we shall treat the State's separation of powers claim as a public policy argument against the enforcement of the speedy trial/dismissal provisions of the IADA, and we shall evaluate the merits of that argument under § 178.

Under § 178(1), the speedy trial/dismissal provisions would be unenforceable on the ground of public policy (1) if the Separation of Powers clause provides that such provisions are unenforceable, or (2) if the interest in the enforcement of those provisions is clearly outweighed by separation of powers concerns against enforcement. Obviously, the Separation of Powers clause does not expressly state that these types of provisions are unenforceable. Because we have already held that the undue interference test is a balancing approach, we focus on the second method of determining whether the provisions violate public policy.

Because the parties to the agreement are government actors and the agreement itself is legislation, the three interests in favor of enforcement under § 178(2)—the parties' justified expectations, any forfeiture resulting from denial of enforcement, and special public interests in favor of enforcement—are all strongly tied together. The parties' expectations, expressly set out in the IADA, involve "the expeditious and orderly disposition of [pending] charges and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints." IADA, Article I (bracketed material inserted). A speedy resolution of pending charges and detainer status is desired on the basis of the belief that pending charges and detainers "produce uncertainties which obstruct programs of prisoner treatment and rehabilitation." *Id.* The party states believe that cooperation is necessary to achieve their desired goals. *Id.*

The interests underlying the statute would be seriously undermined without the speedy trial/dismissal provisions. The IADA requires that a prisoner be returned "[a]t the earliest practicable time consonant with the purposes of the agreement." IADA, Article V(e). The "earliest practicable time" would necessarily be upon the completion of trials of pending charges. Hence, the speedy trial provision, by specifying when trial must commence, provides a reasonably definite timetable for a defendant's return to the sending state. Without that provision, there is no guarantee that the prisoner-detainee will be returned to the sending state in an expeditious manner.

One might perhaps attempt to address this concern by retaining the speedy trial provision but striking the dismissal provision. The result of such a holding would be to require the return of a defendant after the expiration of 120 days without dismissing the prosecution. But that approach would also frustrate the IADA's purposes. Under those circumstances, a pending prosecution would remain pending, and the defendant's detainer status would be unresolved. At some later time, the prosecutor might ask for a second transfer. The possibility arises that a defendant may be bounced back and forth between jurisdictions. Such a result would surely disrupt treatment and rehabilitation programs directed toward the prisoner.

Moreover, the IADA gives the governor of the sending state the power to disapprove any request for a temporary transfer. IADA, Article IV(a). If prosecutors in this state regularly disregarded the time limits in the IADA with impunity, governors in other states might decide to disapprove transfers. Such a state of affairs would cause a breakdown in Texas' ability to obtain prisoners through the IADA and thus frustrate the Act's purposes.

Not only does the IADA serve Texas' interests in obtaining out-of-state prisoners but it also serves the interests of all member jurisdictions in resolving quickly and efficiently a prisoner's status. Currently, forty-seven other states, the federal government, and the District of Columbia are parties to the IADA. *See* V.A.C.C.P., Article 51.14, p. 178 (Supp.1997). To seriously undermine the IADA would frustrate important interests in a large number of jurisdictions. We find that the interests in favor of enforcing the provisions at issue are strong.

We now turn to the four factors under § 187(3) to be considered against the enforcement of a provision. The first factor is the strength of the policy as manifested by legislation or judicial decisions. It is beyond dispute that the separation of powers doctrine is a very important aspect of Texas law. The doctrine is contained in an express provision in our state constitution. As *Meshell* and *Armadillo Bail Bonds* illustrate, we have relied upon the Separation of Powers clause several times to invalidate important legislation. We have previously expressed the important role the clause plays in protecting the freedoms of the citizens of this state:

> This separation of powers provision reflects a belief on the part of those who drafted and adopted our state constitution that one of the greatest threats to liberty is the accumulation of excessive power in a single branch of government.

*Armadillo Bail Bonds,* 802 S.W.2d at 239.

Given that the separation of powers doctrine embodies strong policy interests, the question remains whether a refusal to enforce the speedy trial/dismissal provisions is likely to further those interests (the second factor under § 178(3)). We believe the interests behind the separation of powers doctrine would not be significantly advanced by preventing enforcement of the provisions in question. Because the prosecutor has no extraterritorial power, he gains a benefit by using the provisions of the IADA—access to a defendant whom he would otherwise have no power to reach. The Legislature was not obliged to give the prosecutor that benefit. Having done so, we do not believe it unreasonable for the Legislature to impose some conditions. Moreover, the prosecutor who makes a request under the IADA knows or should know, when he makes that request, that he will have a time limit in which to try the prisoner. If the prosecutor needs time to investigate, he can simply refrain from filing a request until he has gathered enough information to proceed quickly to trial. Further, if unexpected events prevent trying the case within the 120 day time limit, the trial court may grant a continuance upon a showing of good cause in open court with the prisoner or his counsel present. IADA, Article IV(c). The ability to obtain a continuance upon a showing of good cause strongly diminishes the likelihood that the speedy trial/dismissal provisions would hamper a diligently pursued prosecution. In the present case, however, the State never requested a continuance under the IADA.

The final two § 187(3) factors against enforcement relate to misconduct that may be prohibited by the relevant public policy under consideration. We do not believe the IADA causes any relevant misconduct.[7] On the contrary, the provisions serve the salutary purposes of quickly and efficiently resolving a prisoner's pending charges and custody status.

Based upon the above discussion, we conclude that the public policy concerns embodied in the Separation of Powers clause do not outweigh—much less clearly outweigh—the interest in enforcement of the IADA provisions. Therefore, we hold that these provisions do not unduly interfere with the prosecutor's exercise of his constitutionally assigned powers.

The judgments of the courts below are affirmed.

---

7. To the extent that a limitation on a prosecutor's discretion could be viewed as "misconduct," we have already addressed that matter in the above discussion.