**John Thomas PARKER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–00–00043–CR.**

Court of Appeals of Texas,
Texarkana.

Submitted March 13, 2001.

Decided May 29, 2001.

Sydney Young, Paris, for appellant.

Gary L. Waite, Assistant County Atty.– Appellate Section, Paris, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

GRANT, Justice.

John Parker appeals from his conviction by a jury for the offense of aggravated robbery. The jury found that he had used a deadly weapon during the robbery and assessed his punishment at life imprisonment.

Parker contends on appeal that the trial court erred by admitting testimony of law officers about a statement he made at lunch break during the trial. He also contends that the court erred by allowing the State to make an argument to the jury at the end of the first day, that TEX.CODE CRIM. PROC. ANN. art. 37.07 (Vernon 1981 & Supp.2001) is unconstitutional, and that his confession was improperly admitted into evidence.

On September 1, 1999, the home of Loretta and Aud Brow was burglarized. During the burglary, Loretta was beaten with a stick and injured. The next day, Parker and Kenneth Enlow (who was tried along with Parker and who also has an appeal before this court) pawned a VCR and Stihl saw that were taken in the burglary. Parker was arrested and made a statement admitting his involvement in this and other

crimes. Parker was charged with multiple crimes, but the State elected to proceed only on this charge.

Parker first contends that the court erred by allowing the State to introduce evidence about a comment he made to two officers of the Lamar County Sheriff's Department during a lunch break during the first day of the trial. He argues that the admission of the evidence about this statement violated his constitutional protections and the requisite presumption of innocence.

The record shows that David Sehl, with the sheriff's department, was called by the State. Sehl testified that he was in charge of taking the defendant to lunch. Counsel objected and approached the bench. The court overruled his objection and stated that he would later allow counsel to make a bill so that the substance of his objections would be part of the record. Sehl was allowed to continue, and he testified that Parker made an unsolicited statement to him and another deputy. The State had just presented evidence about the injuries to the alleged victim. Parker asked the officers if he could tell them something, and although they told him that it was "probably not a good idea," he said, "well, I just want somebody to know that I really didn't mean to hurt that lady as much as she was hurt."

Parker argues that the testimony violated the "very heart" of the presumption of innocence under the Fourteenth Amendment to the United States Constitution.[1] He bases his argument on the showing that he was in the custody of the officers was similar to a situation where a defendant is forced to be tried in prison clothes. This brought dramatically to the jury's attention Parker's status as a jail inmate and could have affected the jury's ability to presume him innocent until proven guilty.

The impact of requiring a defendant to wear prison clothing during his trial is an issue that has been much discussed. In the lead case, *Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 1692–94, 48 L.Ed.2d 126, 130–32 (1976), the Court discussed the potential effects of presenting an accused before a jury in prison garb for the length of a trial and the unfairness of the reality that the practice operated usually against only those who could not afford to post bail before trial. In any trial, obviously, the jury is aware that the accused was arrested by police and charged with a crime. The Court discussed the presumption of innocence in this context as being undermined by a factor (the prison clothing) that might undermine the fairness of the fact-finding process. The Court recognized that the clothing was likely to be a continuing influence throughout the trial and that it was not a requirement furthering any essential state policy. Thus, the Court concluded that if the defendant sought to appear in civilian clothes, he should be permitted to do so.

That analysis does not control this situation; however, it was apparent from the officer's testimony that Parker was still under the control of law enforcement personnel. Unlike *Estelle*, the fact of Parker's incarceration was not constantly before the jury in a manner which could not be avoided. The questioning of the officer did not elicit any facts about Parker's incarceration, but only that the officer had been in charge of taking Parker to lunch at the sheriff's office and that while he was

---

**1.** The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." Similarly, TEX. CONST art. I, § 19 provides that "[n]o citizen of this State shall be deprived of life, liberty, [or] property" except by the "due course of the law of the land."

doing so, Parker made the inculpatory statement. Although we agree that courts should be careful not to bring before the jury anything which would inform the jurors that the accused is in custody, in this situation Parker brought the situation on himself. We do not find the limited commentary by the officer to be of such a nature as to impinge on Parker's rights.

Parker next contends that the trial court erred by allowing the State to make a summation argument to the jury at the end of the first day of testimony, before the State had closed its case and before the jury charge was given, in violation of U.S. CONST. amend. XIV, TEX. CONST. art. I, § 19, and TEX.CODE CRIM. PROC. ANN. arts. 36.01, 36.14 (Vernon Supp.2001), art. 36.16 (Vernon Supp.2001). In this case, the court offered both parties the chance to summarize the evidence heard that day and their predictions about what the next day might bring. The State accordingly summarized its evidence about the beating, the thefts, the lunch-hour confession, and his expectation that he would show that one stolen item was found at Parker's house and that another one had been pawned by Parker. The State also engaged in an argument explaining its viewpoint on the evidence and how it provided uncontrovertible proof of guilt. Parker's counsel chose not to make any argument.

The course of trial and jury argument is set out by TEX.CODE CRIM. PROC. ANN. arts. 36.01, 36.14, and 36.16. There is no provision for interim argument or summaries to be given by counsel.

### Preservation of error

■ In this appeal, however, only a portion of the argument set out above has been preserved for appellate review.

Counsel did not object to the court's announced procedure of allowing the parties to summarize the evidence at the end of the day. Thus, the use of the procedure itself is not properly before this court for review at this time.

Counsel did preserve his complaint that the factual "summary" was improperly allowed to become instead a persuasive argument to the jury, and that contention is before this court for review.

### The waived argument

Parker argues that in this case the defense could not have intelligently summarized the evidence because the State had not at that point elected on which of the multiple charges and theories it would seek a conviction. Defense counsel therefore could not make an adequate decision as to such a summary, simply because counsel could not know where the State was going with its case. As a result, the State was able to encourage the jury to consider the evidence in its favor while at the same time the accused was unable to present his position. Counsel also argues that such a premature summary was inappropriate, pointing out that the jurors are instructed not to discuss the case even among themselves until *all* of the evidence is presented.[2]

This aspect of the argument on appeal has been waived, and although we emphatically do not approve this procedure, we may not address this contention on its merits.

### The preserved argument

■ In the remaining core of his argument, Parker's counsel contends that the argument made over his objection as a

---

**2.** In general support for his position, counsel directs the court to *Herring v. New York,* 422 U.S. 853, 858–59, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975), in which the Court acknowledged that it is only after the evidence is presented that counsel for the parties are in a position to present their respective versions of the case as a whole.

part of that "summary" constitutes reversible error.

The State takes the position in a brief argument that what actually occurred, by the direction of the court, was not argument, but merely a factual summary of the day's evidence. What actually occurred was somewhat more than a simple summary of the day's activities. The State also set out its view of the evidence and what it believed the evidence proved in respect to some of the charged offenses. Defense counsel objected at one point complaining that the State was instead making an argument. In denying the objection, the trial court stated that it was the State's view of the evidence. When a party describes the evidence and then applies its own spin on that evidence to show that it surely proved guilt, that can constitute argument.

Neither party has cited a case on point, and we have found none. The statutory underpinning (TEX.CODE CRIM. PROC. ANN. art. 36.01 (Vernon Supp.2001), art. 36.07 (Vernon 1981)) provides the only venue in which jury arguments are permissible. The statute restricts argument to a particular portion of the trial. The fact that the statute does not explicitly say that jury argument cannot be made at other times is not dispositive. Where explicit directions are given, there is no need to also explicitly condemn any other mode of operation. Failure to follow statutory direction is error.

**Harm analysis**

We now must decide what type of harm analysis should be applied. Having determined that the court erred by permitting the prosecutor to make a preliminary jury argument at an improper point in the pro-

ceeding, we must determine whether the error warrants reversal.

Counsel argues that it is unconstitutional because it infringes on Parker's right to be presumed innocent until proven guilty after *all* of the evidence has been presented. This argument assumes that the early presentation to the jury impinged on the presumption of innocence.[3] TEX.CODE CRIM. PROC. ANN. art. 2.03(b) (Vernon 1977) sets out the duty of all officers of the court to ensure a fair trial and not to impair the presumption of innocence.

The purpose of closing argument has been described as "to facilitate the jury in properly analyzing the evidence presented at trial so that it may arrive at a just and reasonable conclusion based on the evidence alone, and not on any fact not admitted in evidence." *Campbell v. State*, 610 S.W.2d 754, 756 (Tex.Crim.App. [Panel Op.] 1980); *Monkhouse v. State*, 861 S.W.2d 473, 478 (Tex.App.—Texarkana 1993, no pet.).

■ To allow the state to present a jury argument in mid-trial impinges on that presumption, because the state argues in favor of guilt before the presentation of all the evidence. This is an act that is contrary to every other stricture concerning the presentation to and consideration of evidence by the jury.

The statutes setting out the order of trial have constitutional implications. Under the facts of the present case, allowing the State to make a jury argument prior to the presentation of all the evidence implicates constitutional concerns about the presumption of innocence and should not be allowed. Accordingly, we conclude that

---

**3.** The Fourteenth Amendment to the United States Constitution protects an accused's right to a fair trial, and the presumption of innocence is a basic component of the right to

a fair trial. *See* TEX.CODE CRIM. PROC. ANN. art. 38.03 (Vernon Supp.2001); *Randle v. State,* 826 S.W.2d 943, 944–45 (Tex.Crim.App.1992) (per curiam).

we should analyze this error under TEX. R.APP. P. 44.2(a) for harmless error.

**Harm analysis: application**

We must therefore apply Rule 44.2(a) and reverse unless we determine beyond a reasonable doubt that the error did not contribute to Parker's conviction or punishment. *See* TEX.R.APP. P. 44.2(a).

■ In this case, Parker admitted his guilt in a written statement that was before the jury and also admitted his guilt in his unsolicited statement to the officers of the sheriff's department. Parker's co-defendant, Enlow, testified that Parker beat the woman and that they stole the items. In light of this state of the facts, we do not believe that the erroneous procedure or the summary of evidence harmed Parker in this particular case.

The contention of harmful error is overruled.

**Article 37.07**

Parker next contends that Article 37.07, § 3(a), which allows a trial court to admit any evidence that the court "deems relevant to sentencing" during the punishment stage of the trial, is unconstitutional because it violates the separation of powers under the State Constitution and due process of law under the Federal Constitution.

Parker specifically argues that it is unconstitutional because the statute gives the court almost unbridled discretion to determine what evidence will be admissible at sentencing regardless of the Rules of Evidence.

■ The separation of powers provision of the Texas Constitution may be violated in two ways: (1) when one branch of government assumes, or is delegated, to whatever degree, a power that is more "properly attached" to another branch, and (2) when one branch unduly interferes with another branch such that the other branch cannot effectively exercise its constitutionally assigned powers. *See State v. Williams*, 938 S.W.2d 456, 458 (Tex.Crim. App.1997). Parker's challenge to the application of Article 37.07, § 3(a) relies on the latter situation. He argues that by eliminating all restrictions on the judge during the sentencing phase, the Legislature has improperly taken away the court's power to act as the rule maker (as in the Rules of Evidence) and taken that power on itself by eliminating the rules in this context.

The Texas Constitution expressly grants the judicial branch authority over judicial administration.[4]  TEX. CONST. art. V, § 31;

4. In *Armadillo Bail Bonds v. State*, 802 S.W.2d 237 (Tex.Crim.App.1990), the court has an excellent discussion of the separation of power as it pertains to the judiciary. The court ultimately determined that the statute under review unduly interfered with the judiciary's effective exercise of its constitutionally assigned powers. The case specifically cites Article V, § 1 of the Texas Constitution and states, "The Texas Constitution explicitly vests the judicial power of the state in the courts." *See id.* at 239; *see also* TEX. CONST. art. V, § 1. The court does state that the Legislature has ultimate authority over judicial "administration," citing *Meshell v. State*, 739 S.W.2d 246, 255 (Tex.Crim.App.1987). The *Meshell* opinion draws its conclusion from the language in TEX. CONST. art. V, § 25, *repealed by* Act of May

27, 1986, 69th Leg., R.S., SJR 14, § 9, 1985 Tex. Gen. Laws 3355, 3359, which at that time stated, "The Supreme Court shall have the power to make and establish rules of procedure not inconsistent with the laws of the State for the government of said court and the other courts of this State to expedite the dispatch of business therein." *Meshell*, 739 S.W.2d at 255, quoting TEX. CONST. art. V, § 25, *repealed by* Act of May 27, 1986, 69th Leg., R.S., SJR 14, § 9, 1985 Tex. Gen. Laws 3355, 3359. This language was repealed by the voters of November 5, 1985.

The present language that appears in the Texas Constitution in Article V, § 31 Court Administration, Rule Making Authority, provides in subsection (a) that the Texas Supreme Court promulgate the rules of adminis-

*Armadillo Bail Bonds v. State,* 802 S.W.2d 237, 240 (Tex.Crim.App.1990). Under the circumstances, Article 37.07, § 3(a) violates Article V, § 31 only if the Legislature, in the exercise of its constitutional authority, has so interfered with the judicial branch as to prevent the effective exercise of the latter branch's constitutionally assigned powers. *Armadillo Bail Bonds,* 802 S.W.2d at 239.

Furthermore, Article 37.07, as enacted by the Legislature, allows each individual sentencing court to dictate what evidence may be presented at the punishment phase of a trial. Any matter the court deems relevant to sentencing is admissible. TEX.CODE CRIM. PROC. ANN. art. 37.07. This does not take authority away from the judicial branch, but rather gives it to the individual trial courts. *See Enlow v. State,* No. 06–00–00101–CR, 2001 WL 256330, at *5 (Tex.App.—Texarkana Mar. 16, 2001, no pet. h.).

The judicial branch embraces the power to hear evidence, to decide the issues of fact raised by the pleadings, to decide the relevant questions of law, to render a final judgment on the facts and the law, and to execute the final judgment or sentence. *Armadillo Bail Bonds,* 802 S.W.2d at 239–40; *Kelley v. State,* 676 S.W.2d 104, 107 (Tex.Crim.App.1984). Article 37.07, § 3(a) does not interfere with any of these core judicial powers, but merely prescribes the procedure by which Article 37.07 is to be implemented. We find no violation of separation of powers.

Parker also contends that Article 37.07, § 3(a) denies him due course of law. He

tration not inconsistent with the laws of the state; in subsection (b) the Texas Constitution provides that the Texas Supreme Court shall promulgate the Rules of Civil Procedure not inconsistent with the laws of the state; and in subsection (c), the Legislature may designate to the Texas Supreme Court or the Texas

does not specify any particular way in which it does so and has provided no argument specific to this contention. The only argument made is that by eliminating the use of the Rules of Evidence (save only for relevance), the Legislature has tried to suspend "due course and due process for criminal defendants in punishment hearings, as there is no legislative or court guidance and no procedure for ensuring the punishment hearing is conducted fairly and without undue prejudice."

The Legislature did set up standards to be followed, albeit very loose standards requiring only that the evidence be relevant. Parker has received due process, but not through the application of the same evidentiary rules used during the guilt/innocence phase of trial. Due process has not been violated by the relaxing of evidentiary rules at the punishment phase of the trial.

Parker next contends that the court erred by admitting his confession in the absence of adequate and timely *Miranda* warnings.[5] He also argues the provisions of Article 38.22 were not met. Parker contends that the court erred because there was no evidence that while in custody and under interrogation, he was warned before the time that he made his written statement. Specifically, he contends that the officers did not read his *Miranda* rights to him at the beginning of his interrogation, but only when, after several hours, he agreed to make a formal statement.

Court of Criminal Appeals the power to promulgate other rules as prescribed by law or the Texas Constitution subject to limitations and procedures as may be provided by law.

5. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

A trial court's decision to grant or deny a motion to suppress is reviewed under an abuse of discretion standard. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex.Crim.App.1996). The general rule is that an appellate court should afford almost total deference to a trial court's determination of the historical facts supported by the record, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Id.* At a suppression hearing, the trial court is the exclusive trier of fact and judge of the credibility of the witnesses. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim.App.1997). We are also to afford such deference to a trial court's ruling on "application of law to fact questions," also known as "mixed questions of law and fact," if the resolution of those questions turns on an evaluation of credibility and demeanor. *Id.* We may review *de novo* those questions not turning on credibility and demeanor. *Id.*

Detective Jeff Springer testified that he orally informed Parker, using a written form, about his right to remain silent when he initially began interviewing Parker. Further, the written form which he used is part of the record, and was initialed and signed by Parker and witnessed at 3:38 p.m. on the day of his arrest and at the time the interrogation began. There is no evidence to the contrary. This is evidence from which the court could conclude in its fact-finding capacity would support a conclusion that Parker was aware of his rights under *Miranda* and chose to waive those rights. This contention of error is overruled.

The judgment is affirmed.