**NEWELL WINDOW FURNISHING, INC.**

v.

**Ruth E. JOHNSON, Commissioner of Revenue, State of Tennessee.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

Sept. 8, 2008 Session.

Dec. 9, 2008.

Frank N. Stockdale Carney and Katharine A. Jungkind, Memphis, Tennessee, and Paul D. Krivacka, Nashville, Tennessee, for the appellant, Newell Window Furnishing, Inc.

Robert E. Cooper, Jr., Attorney General and Reporter, and Brad H. Buchanan, Assistant Attorney General, Nashville, Tennessee, for the appellee, Ruth E. Johnson, Commissioner of Revenue, State of Tennessee.

## OPINION

SHARON G. LEE, Sp. J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

The issues presented in this case involve the interplay between the Tennessee excise tax and the provisions of 26 U.S.C. § 338(h)(10). Newell Window Furnishing, Inc. ("Newell") filed suit for refund of state excise tax paid on income recognized from the sale of corporate capital stock it owned in Kirsch, Inc. ("Kirsch"). The trial court denied the refund. After careful review, we affirm the decision of the trial.

### I. Background

This case concerns the State excise tax consequences of the one hundred percent liquidation of a corporation's capital stock and involves three corporate entities. The parties and factual chronology are as follows:

1) Prior to 1997, Kirsch was a division of Cooper.

2) In January of 1997, Kirsch became a wholly owned corporate subsidiary of Cooper.

3) In May 1997, Cooper sold 100% of Kirsch's capital stock to Newell. Pursuant to Newell's election and the agreement of Newell and Cooper, the Kirsch stock sale was treated as a sale of assets as permitted by 26 U.S.C. § 338(h)(10).

As a result of this sale and election, Kirsch reported the gain from the sale as income on the pro forma federal income tax return that was filed as a part of Cooper's consolidated federal return. Kirsch filed a Tennessee excise tax return for the year ending May 30, 1997, and deducted an amount representing the gain from the sale from its reported net earnings and claimed this amount as a refund. The Commissioner of the Tennessee Department of Revenue ("the Commissioner") denied the request and assessed additional franchise and excise taxes against Kirsch. Newell, having succeeded to Kirsch's interests as a result of the sale, filed suit seeking refund of excise taxes, and the trial court granted summary judgment to the Commissioner, ruling that the gain on the sale of Kirsch's capital stock subjected Kirsch to Tennessee excise tax liability. Newell appeals.

### II. Issues

We address the following issues:

1) Whether the gain from the sale of Kirsch's capital stock to Newell was properly included in Kirsch's excise tax base where Newell and Cooper agreed to treat the sale in accordance with I.R.C. § 338(h)(10).

2) Whether the gain from the sale of Kirsch's capital stock to Newell is properly categorized as "business earnings" under Tenn.Code Ann. § 67–4–804(a)(1)[1] and, therefore, apportionable as part of Kirsch's tax base for Tennessee excise tax purposes.

3) Whether the assessment of excise taxes against Kirsch as a result of the sale of Kirsch's capital stock to Newell is a violation of the Commerce Clause and the Due Process Clause of the U.S. Constitution under the unitary business principle.

### III. Analysis

#### A. Standard of Review

Summary judgments enable courts to conclude cases that can and should be resolved on dispositive legal issues. *See Byrd v. Hall,* 847 S.W.2d 208, 210 (Tenn. 1993); *Airport Props. Ltd. v. Gulf Coast Dev., Inc.,* 900 S.W.2d 695, 697 (Tenn.Ct. App.1995). They are appropriate only

---

1. The transactions at issue in this case having occurred in 1997, all references herein are to that version of the Tennessee Code in effect in 1997. The Court recognizes that since that time, the cited sections have been recodified with different section numbers.

when the facts material to the dispositive legal issues are undisputed. Accordingly, they should not be used to resolve factual disputes or to determine the factual inferences that should be drawn from the evidence when those inferences are in dispute. *See Bellamy v. Fed. Express Corp.,* 749 S.W.2d 31, 33 (Tenn.1988).

Our task on appeal is to review the record to determine whether the requirements for granting summary judgment have been met. *See Hunter v. Brown,* 955 S.W.2d 49, 50–51 (Tenn.1997); *Aghili v. Saadatnejadi,* 958 S.W.2d 784, 787 (Tenn. Ct.App.1997). Tennessee Rule of Civil Procedure 56.04 provides that summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, *see Byrd,* 847 S.W.2d at 210; and (2) the moving party is entitled to a judgment as a matter of law on the undisputed facts. *See Anderson v. Standard Register Co.,* 857 S.W.2d 555, 559 (Tenn.1993). A party seeking a summary judgment must demonstrate the absence of any genuine and material factual issues. *Byrd,* 847 S.W.2d at 214. In this case, the salient facts are not in dispute, and it is our task to determine whether summary judgment was proper as a matter of law.

### B. Gain Under 26 U.S.C. § 338(h)(10)

26 U.S.C. § 338(h)(10) provides in part as follows:

(10) Elective recognition of gain or loss by target corporation, together with nonrecognition of gain or loss on stock by selling consolidated group.—

(A) In general—Under regulations prescribed by the Secretary, an election may be made under which if—

(i) the target corporation was, before the transaction, a member of the selling consolidated group, and

(ii) the target corporation recognizes gain or loss with respect to the transaction as if it sold all of its assets in a single transaction then the target corporation shall be treated as a member of the selling consolidated group with respect to such sale, and (to the extent provided in regulations) no gain or loss will be recognized on stock sold or exchanged in the transaction by members of the selling consolidated group.

First, Newell argues that its election to treat the sale of Kirsch's stock in accordance with 26 U.S.C. § 338(h)(10) "was an election for specific federal tax treatment and nothing else." Newell contends that this section creates the "legal fiction" that the sale is a sale of Kirsch's assets followed by what is deemed an immediate liquidation of that company and that this "legal fiction" was the only reason Kirsch reported a gain from the sale on the pro forma tax return that was filed in support of Cooper's consolidated return. Newell argues that this "legal fiction" should not determine Kirsch's Tennessee excise tax liability. Newell notes that Cooper was the owner and seller of Kirsch's stock, received the sales proceeds, and reported the gain from the sale in its (Cooper's) income for federal consolidation purposes. Therefore, Newell contends, the gain from the sale of Kirsch's capital stock should be included in Cooper's excise tax base, not Kirsch's. We respectfully disagree.

Each separate corporation doing business in Tennessee is responsible for payment of the state's excise tax pursuant to Tenn.Code Ann. § 67–4–806(a) (1994), which provides that "[a]ll corporations, . . . organized for profit under the laws of this state or any other state or country and doing business in Tennessee, . . . shall,

without exception other than as provided herein, pay to the commissioner of revenue, annually, an excise tax." Further, it is agreed that Tennessee statutory law provides, as follows, that the starting point for determining a corporation's Tennessee excise tax base is federal taxable income:

> Except as provided in subdivision (a)(2) or (3), "net earnings" is defined as federal taxable income before the operating loss deduction and special deductions provided for in 26 U.S.C. §§ 241–247 and 249–250, and subject to the adjustments in subsection (b).

Tenn.Code Ann. § 67–4–805(a)(1). Both of these statutory provisions were in effect when Newell elected to proceed under 26 U.S.C. § 338(h)(10) as to the sale of Kirsch's capital stock. Accordingly, Newell is presumed to have understood that under Tenn.Code Ann. § 67–4–806(a), Kirsch, as a corporation doing business in Tennessee, would be required to pay an excise tax and that the amount assessed would be determined by the amount of income reported by Kirsch for federal income tax purposes. While Newell terms the consequence of its election to proceed under 26 U.S.C. § 338(h)(10) a "legal fiction," it resulted in a real benefit to Newell in that, as recognized by the trial court in its final order, Newell was thereby "enabled to allocate the price paid for the stock to the assets obtained and to use the allocation as the cost basis for purposes of depreciating and/or amortizing the cost basis of the assets." Having freely chosen to proceed under 26 U.S.C. § 338(h)(10), Newell is bound by that choice and all attendant consequences. As the trial court further correctly observed, under the above noted Tennessee statutory authority, a subsidiary corporation doing business in this state is separately reported and taxed, such tax is assessed based upon such subsidiary's reported federal taxable income, and there is no requirement that the subsidiary actually have incurred and paid the federal tax as a prerequisite to imposition of the excise tax.

Although Tennessee courts do not appear to have addressed the state excise tax ramifications of an election under the subject section of the Internal Revenue Code, we find guidance, as did the trial court, in an opinion of the Tax Court of New Jersey, *Gen. Bldg. Prods. Corp. v. New Jersey,* 14 N.J.Tax 232 (1994). Under the facts in that case, one corporation purchased all of the stock of another corporation's wholly-owned subsidiary and by agreement of the purchaser and seller an election was made under 26 U.S.C. § 338(h)(10) to treat the sale of stock as a sale of assets for purposes of federal income taxation. As a result of the election, as regarded federal taxes, the subsidiary was deemed to have sold all of its assets to itself for the amount paid for its stock, and the purchaser had the subsidiary report the gain from the deemed sale in the subsidiary's state corporate business tax return. Thereafter, this return was amended to disavow the deemed sale and associated previously reported gain and to request a refund of taxes paid upon such reported gain. At trial upon the refund request, the purchaser argued that 26 U.S.C. § 338(h)(10) is provided for use by consolidated groups and because New Jersey did not recognize consolidated groups or consolidated filings (just as Tennessee imposes an excise tax on each separate corporation doing business in our state), it could not recognize the consequences of the parties' election under that section, including the deemed sale of the subsidiary's assets and the gain reported on such sale. The trial court found no merit in this argument, stating as follows:

> New Jersey's prohibition against consolidated returns does not immunize [the subsidiary] from state taxation of any

gain as a result of its assets. It merely requires that the tax consequences of the deemed sale be independently reported by [the subsidiary]. The original [corporate business tax return] for the State of New Jersey ... reflecting the gain in the books of account of [the subsidiary] of the deemed sale of its assets to itself and reflecting the stepped-up basis of those assets, represents the correct tax consequences under the Act and the applicable regulations of the deemed sale and the election under § 338(h)(10).

*     *     *

*The parties made the § 338(h)(10) election and are bound to accept the consequences which flow from it under the [New Jersey Corporate Business Tax Act].* In this case, because of New Jersey's prohibition of consolidated returns, one consequence of [the purchaser's] and [the seller's] decision to make a § 338(h)(10) election is that [the subsidiary] must independently report the gain from the deemed sale. Any other result would deprive the State of New Jersey of taxes to which it is legitimately entitled.

*Id.* at 248–249 (emphasis added).

Based upon the plain meaning of the above referenced statutory authority and guided by the court's ruling in *Gen. Bldg. Prods. Corp.,* we conclude that the gain reported by Kirsch on the federal pro forma tax return as a result of the deemed sale of its assets was properly included in its excise tax base, and Newell's argument to the contrary is without merit.

### C. Business Earnings

■ Next, Newell contends that even if the gain from the sale of Kirsch's assets is properly recognized for purposes of the excise tax, such gain constitutes nonbusiness earnings and therefore, should not be included in Kirsch's tax base for purposes of assessing the Tennessee excise tax.

For tax purposes, Tennessee statutory law requires that a corporation divide its income among those states in which it is doing business according to whether such income is classified as "business earnings" or "nonbusiness earnings" with the tax of business earnings being apportioned among the various states consistent with a formula taking into account the corporation's property, payroll, and sales and with the tax based upon nonbusiness earnings being allocated to its source in a particular state. *See Gen. Care Corp. v. Olsen,* 705 S.W.2d 642, 644 (Tenn.1986). Tennessee Code Annotated § 67–4–804(a)(1) (Supp. 1997) defines "business earnings" as

earnings arising from transactions and activity in the regular course of the taxpayer's trade or business or earnings from tangible and intangible property if the acquisition, use, management or disposition of the property constitutes an integral part of the taxpayer's regular trade or business operations. In essence, earnings which arise from the conduct of the trade or trades or business operations of a taxpayer are "business earnings," and the taxpayer must show by clear and cogent evidence that particular earnings are classifiable as nonbusiness earnings.

Nonbusiness earnings consist of "all earnings other than business earnings." Tenn. Code Ann. § 67–4–804(a)(10). That portion of the statute defining "business earnings" as "earnings arising from transactions and activity in the regular course of the taxpayer's trade or business" has been designated "the transactional test," whereas that part of the statute defining "business earnings" as "earnings from tangible and intangible property if the acquisition, use, management or disposition of the

property constitutes an integral part of the taxpayer's regular trade or business operations" has been entitled the "functional test." *Associated P'ship I, Inc. v. Huddleston,* 889 S.W.2d 190, 195–96 (Tenn.1994).

Newell contends that earnings are properly classified as business earnings under both the transactional test *and* the functional test only if they are earnings arising from the regular course of the taxpayer's trade or business. Newell notes that the trial court specifically found that the sale of Kirsch was a one-time sale of an entire business entity, which was not in the regular course of Kirsch's trade or business, and therefore, any gain from the disposition of Kirsch's assets constitutes nonbusiness earnings. We do not agree.

■ Newell construes the functional test to mean that earnings from the disposition of a taxpayer's business are not business earnings unless the disposition itself was an integral part of the taxpayer's trade or business. But this is in fact the transactional test. In accord with what we deem to be the plain meaning of the statutory language, we construe the functional test to mean that business earnings are earnings which arise from either the management, use, acquisition, or disposition of *property that constitutes an integral part of the taxpayer's trade or business.* The proper question under the functional test is not whether the *disposition* of the property was an integral part of the corporation's regular business, but rather, whether *the property disposed of* was an integral part of the corporation's regular business. It is not disputed that the assets deemed sold by Kirsch were an integral part of Kirsch's regular business, and accordingly, the gain realized from the sale constitutes business earnings subject to apportionment for excise tax purposes.

## D. Unitary Business Principle

■ The final issue presented for our review is whether including the gain from the deemed liquidation of Kirsch in Kirsch's excise tax base violates the Due Process Clause and the Commerce Clause of the U.S. Constitution under the unitary business principle.

Both the Due Process Clause and the Commerce Clause require that there be "some link, some minimum connection, between a state and the person, property or transaction it seeks to tax" and forbid a State to tax gains earned outside its borders. *See Allied–Signal, Inc. v. Director, Div. of Taxation,* 504 U.S. 768, 777, 112 S.Ct. 2251, 119 L.Ed.2d 533 (1992) (citing *Miller Brothers Co. v. Maryland,* 347 U.S. 340, 344–345, 74 S.Ct. 535, 98 L.Ed. 744 (1954)). However, where, as in the instant matter, a taxpayer has done business in the State, taxation is justified by the "protection, opportunities and benefits" the State has conferred on the taxpayer's activities within the State. *Id.* at 778, 112 S.Ct. 2251. The U.S. Supreme Court has further noted in a recent opinion that when a taxpayer has engaged in intrastate business the question becomes what aspect of the business may be taxed by the host state, and this has given rise to the unitary business principle:

> Where, as here, there is no dispute that the taxpayer has done some business in the taxing State, the inquiry shifts from whether the State may tax to what it may tax. To answer that question, we have developed the unitary business principle. Under that principle, a State need not isolate the intrastate income-producing activities from the rest of the business but may tax an apportioned sum of the corporation's multistate business if the business is unitary. The court must determine whether intrastate and extrastate activities formed part of a

single unitary business or whether the out-of-state values that the State seeks to tax derived from unrelated business activity which constitutes a discrete business enterprise.

*MeadWestvaco Corp. v. Ill. Dep't of Revenue,* 553 U.S. 16, 25, 128 S.Ct. 1498, 1505, 170 L.Ed.2d 404 (2008) (citations omitted). In *Louis Dreyfus Corp. v. Huddleston,* 933 S.W.2d 460 (Tenn.Ct.App.1996), we noted that "[a] unitary business is a business whose components are too closely connected and necessary to each other to justify division or separate consideration as independent units" *Id.* at 467. Unity of ownership alone is insufficient to support a finding that a business is unitary, and factors that should be considered in reaching that determination are the extent of control and ownership that the various components of the business have over one another, the degree of functional integration or interrelationship/interdependence among the business's operations, and the economies of scale. *Id.* at 469–70.

Newell contends that the Department's attempt to assess taxes on the gain from the sale of Kirsch's capital stock is actually a tax on Cooper. Newell asserts that Kirsch and Cooper are not a unitary business, given that they were involved in unrelated industries and functioned as stand alone businesses with separate management, accounting departments, and computer systems. Therefore, Newell apparently argues, any excise tax that is in effect a tax on Cooper violates the Due Process and Commerce Clauses.

We find no merit in Newell's argument for the simple reason that the record does not support Newell's allegations that the tax at issue was a tax imposed on Cooper. The tax was imposed on Kirsch alone, based upon the gain reported by Kirsch on the federal pro forma tax return, reflecting as we have determined, business earnings on the sale. Kirsch paid the tax. Under the circumstances, it is irrelevant whether Kirsch and Cooper are unitary. It is undisputed that Kirsch was doing business in Tennessee during the year of assessment, and the assessment of excise taxes based upon its business earnings from the sale of its assets in that year did not violate either the Commerce Clause or the Due Process Clause.

### IV. Conclusion

For the reasons stated herein, we affirm the judgment of the trial court. Costs of appeal are assessed to Newell Window Furnishing, Inc., for which execution may issue if necessary.