274 S.W.3d 150 (2008)
TEXAS DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES, Appellant,
v.
Travis Reid DICKENSHEETS and Andrea Liguori, Appellees.
No. 01-07-00584-CV.
Court of Appeals of Texas, Houston (1st Dist.).
September 11, 2008.
*152 Jeri Yenne, Crim. Dist. Atty., Trey D. Picard, Asst. Dist. Atty., Shayna Lynn Rosen Taibel, Terry and Terry, Angleton, for appellant.
Colin B. Amann, Julie A. Ketterman, Ketterman & Amann, PLLC, Houston, Shannon Tigner, Bass & Tigner, Angleton, for appellees.
Panel consists of Chief Justice RADACK and Justices KEYES and HIGLEY.

OPINION
EVELYN V. KEYES, Justice.
In this accelerated appeal, appellant, the Texas Department of Family and Protective Services ("DFPS") challenges the validity of Family Code section 263.401. In two issues, DFPS argues that (1) the deadline for dismissal of suits brought by DFPS in section 263.401 invades the exclusive function of a district or county attorney to represent DFPS and thus violates the Separation of Powers Clause and (2) an order dismissing a termination suit under section 263.401 is a final and appealable order.
We affirm.

Background
On February 6, 2006, DFPS filed a suit affecting the parent-child relationship ("SAPCR") under Chapter 263 of the Texas Family Code against appellees, Travis Dickensheets and Andrea Liguori, regarding their children, R.L.D., T.R.D., S.S.W., T.R.W., and T.A.D.[1] On February 14, 2006, the trial court held a hearing, and, after hearing evidence from DFPS, the trial court awarded temporary managing conservatorship to DFPS.
The case was originally set for trial on January 9, 2007. Pursuant to former section 263.401(a) of the Family Code, providing for the dismissal of suits to terminate parental rights if a final order was not rendered within one year after filing of the suit, the trial court had set the proceedings' dismissal date as February 12, 2007. On January 5, 2007, DFPS filed a motion under section 263.401(b) of the Code requesting a 180-day extension of the final order date to comply with section 263.401.
On January 9, 2007, the trial court signed an order extending the dismissal date to August 10, 2007 and set the case for trial on April 23, 2007. The trial court's extension order noted that the parents of the children, Andrea and Travis, did not appear in person at the January 9 hearing.[2] On April 13, 2007, DFPS filed an amended SAPCR petition that named only S.S.W., T.R.W., and T.A.D.
On June 19, 2007, Travis filed a motion to dismiss for DFPS's failure to exercise due diligence in locating placement for the children. Travis asked the trial court to dismiss the suit or to order DFPS to look at home studies of three relatives whom he designated. On the same date, Travis *153 filed a motion to set aside the trial court's order extending the final order deadline because DFPS failed to give him proper notice of the January 9 hearing, which would have enabled him to voice an objection to the extension sought by DFPS.
Another dismissal hearing occurred on June 25, 2007, in which Travis and Andrea argued that they did not get six days notice of the hearing to consider DFPS's motion for extension. The trial court ordered the parties to an informal settlement conference before proceeding with trial. The parties reached an agreement regarding all of the children except T.A.D.
When the parties reconvened before the trial court, appellees continued to argue their motion to dismiss the termination proceeding. Appellees contended that they did not get proper notice of the January 9 extension hearing and, therefore, the extension of the trial court's dismissal date was invalid. DFPS argued that the parties were apprised of the hearing and waived any objections. The parties entered into a Rule 11 agreement whereby the paternal grandparents would have temporary managing conservatorship over T.A.D. The trial court then dismissed DFPS's suit.[3]
On July 11, 2007, DFPS filed a notice of appeal, seeking to challenge the trial court's order that dismissed the termination proceedings. On August 8, 2007, appellees filed a motion to dismiss DFPS's appeal on the ground that the order dismissing DFPS's suit was interlocutory. By order dated August 21, 2007, we ordered that appellees' motion to dismiss the appeal be carried with the case.

Jurisdiction
In its second issue, DFPS argues that an order dismissing a termination suit is a final and appealable order as defined by Family Code section 263.401(d). We agree.
Sections 109.002 and 263.401 of the Family Code allow for accelerated interlocutory appeal of an order dismissing parental termination proceedings. See TEX. FAM. CODE ANN. § 109.002(b) (Vernon 2002); id. § 263.405(a) (appeal of final order rendered under chapter 263 "is governed by the rules of the supreme court for accelerated appeals in civil cases and the procedures provided by this section"). Former subsection 263.401(d) provided:
(d) For purposes of this section, a final order is an order that:
(1) requires that a child be returned to the child's parent;
(2) names a relative of the child or another person as the child's managing conservator;
(3) without terminating the parent-child relationship, appoints the department as the managing conservator of the child; or
(4) terminates the parent-child relationship and appoints a relative of the child, another suitable person, or the department as the managing conservator of the child.
See Act of May 28, 1997, 75th Leg., R.S., ch. 600, § 17, 1997 Tex. Gen. Laws 2108, 2113, amended by Act of May 22, 2001, 77th Leg., R.S., ch. 1090, § 8, 2001 Tex. Gen. Laws 2395, 2396, amended by Act of May 29, 2005, 79th Leg., R.S., ch. 268, § 1.40, 2005 Tex. Gen. Laws 621, 636 [hereinafter FORMER TEX. FAM.CODE ANN. § 263.401] (amended 2007) (current version *154 at TEX. FAM.CODE ANN. § 263.401 (Vernon Supp.2008)). (Emphasis added.)
Here, the dismissal order resulted in T.A.D.'s paternal grandparents being named managing conservators of T.A.D. Thus, the order was a final appealable order as defined by section 263.401(d)(2) of the Family Code.
We sustain DFPS's first issue on appeal.
We deny Andrea's and Travis's motion to dismiss DFPS's appeal.

Separation of Powers
In its first issue, DFPS argues that former section 263.401 and, by extension, current section 263.401,[4] is facially unconstitutional because it violates the separation of powers clause of the Texas Constitution.[5]

1. Former Section 263.401
Former subsections (a) through (c) of section 263.401 of the Family Code provided:
(a) Unless the court has rendered a final order or granted an extension under Subsection (b), on the first Monday after the first anniversary of the date the court rendered a temporary order appointing the department as temporary managing conservator, the court shall dismiss the suit affecting the parent-child relationship filed by the department that requests termination of the parent-child relationship or requests that the department be named conservator of the child.
(b) The court may retain the suit on the court's docket for a period not to exceed 180 days after the time described by Subsection (a), if the court finds that continuing the appointment of the department as temporary managing conservator is in the best interest of the child. If the court retains the suit on the court's docket, the court shall render an order in which the court:
(1) schedules the new date for dismissal of the suit not later than the 180th day after the time described by Subsection (a).
(2) makes further temporary orders for the safety and welfare of the child as necessary to avoid further delay in resolving the suit; and
(3) sets a final hearing on a date that allows the court to render a final order before the required date for dismissal of the suit under this subsection.
(c) If the court grants an extension but does not render a final order or dismiss the suit on or before the required date for dismissal under Subsection (b), the court shall dismiss the suit. The court may not grant an additional extension that extends the suit beyond the required date for dismissal under Subsection (b).
....
See FORMER TEX. FAM.CODE ANN. § 263.401. Because the only issue preserved for review was the constitutionality of section 263.401, we necessarily reach that issue. See In re D.W., T.W. and S.G., 249 S.W.3d *155 625, 634 (Tex.App.-Fort Worth 2008, pet. denied) (court will not pass on constitutionality of statute if case may be decided upon alternative grounds).[6]

Separation of Powers Challenges to Constitutionality
Parties may challenge the constitutionality of a statute by contending that the statute is facially invalid or is invalid as applied to that party. See Tex. Workers' Comp. Comm'n v. Garcia, 893 S.W.2d 504, 518 n. 16 (Tex.1995). Settled statutory law and common law precedent, however, presume that statutes are constitutional and impose a heavy burden on the challenger to demonstrate unconstitutionality. See TEX. GOV'T CODE ANN. § 311.021(1) (Vernon 2005) (stating that compliance with constitutions of Texas and United States is intended); In re Commitment of Fisher, 164 S.W.3d 637, 645 (Tex.2005); Tex. Mun. League Intergovernmental Risk Pool v. Tex. Workers' Comp. Comm'n, 74 S.W.3d 377, 381 (Tex. 2002); Brady v. Fourteenth Court of Appeals, 795 S.W.2d 712, 715 (Tex.1990); Tex. Nat'l Guard Armory Bd. v. McCraw, 132 Tex. 613, 624-25, 126 S.W.2d 627, 634 (Tex. 1939). A separation of powers challenge is a challenge to the facial constitutionality of a statute. See Reyes v. State, 753 S.W.2d 382, 383 (Tex.Crim.App.1988). To prevail on a facial invalidity challenge, the complaining party "must establish that the statute, by its terms, always operates unconstitutionally." City of Corpus Christi v. Public Utility Comm'n, 51 S.W.3d 231, 240-41 (Tex.2001) (citing Barshop v. Medina County Underground Water Conservation Dist., 925 S.W.2d 618, 627 (Tex.1996)). Facial invalidity cannot be premised on "hypothetical facts that have not yet arisen." Tex. Boll Weevil Eradication Found., Inc. v. Lewellen, 952 S.W.2d 454, 463 (Tex.1997) (citing Garcia, 893 S.W.2d at 518). A facially unconstitutional statute is void from its inception. Reyes, 753 S.W.2d at 383.
DFPS argues that section 263.401 is facially unconstitutional because it invades the exclusive power of a district or county attorney to represent DFPS in civil court and thus violates the Separation of Powers Clause in the same way the Court of Criminal Appeals found the Speedy Trial Act unconstitutional in Meshell v. State, 739 S.W.2d 246 (Tex.Crim.App.1987). Specifically, DFPS contends that "Family Code section 263.401 encroaches on the district attorney's prosecutorial discretion in representing the State in termination cases by focusing solely on the prosecutor's ability to obtain a final order within the limited time constraints of the statute."[7]
Article II, section one of the Texas Constitution, governing the separation of powers, provides,
The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are *156 Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.
TEX. CONST. art. II, § 1. The Separation of Powers provision thus prohibits one branch of government from exercising a power inherently belonging to another branch. Gen. Servs. Comm'n v. Little-Tex Insulation Co., 39 S.W.3d 591, 600 (Tex. 2001). Courts in Texas have recognized two varieties of violation of the separation of powers provision:
First, it is violated when one branch of government assumes, or is delegated, to whatever degree, a power that is more "properly attached" to another branch. The provision [Article II, § 1] is also violated when one branch unduly interferes with another branch so that the other branch cannot effectively exercise its constitutionally assigned powers.
Jones v. State, 803 S.W.2d 712, 715-16 (Tex.Crim.App.1991) (quoting Armadillo Bail Bonds v. State, 802 S.W.2d 237, 239 (Tex.Crim.App.1990)) (internal citations omitted). "The power and authority of a state legislature is plenary and its extent is limited only by the express or implied restrictions thereon contained in or necessarily arising from the Constitution itself." Government Servs., 368 S.W.2d at 563. Any time the Legislature promulgates a statute, it exercises a power "properly attached" to itself. Jones, 803 S.W.2d at 716. However, a constitutional problem arises when the core functioning of the judicial process in a field constitutionally committed to the control of the courts is interfered with by the executive or legislative branches. Id.; see also Armadillo Bail Bonds v. State, 802 S.W.2d 237 (Tex. Crim.App.1990) (legislature may not interfere in core judicial functions).
In Meshell, relied upon by the State, the Court of Criminal Appeals invalidated former Article 32A.02 of the Texas Code of Criminal Procedure, which required the State to be ready for trial within 120 days after commencement of a felony criminal action or risk dismissal of the indictment with prejudice. The court acknowledged that "the Legislature could establish a new right under its general plenary power if that right did not infringe upon another department's separate power." 739 S.W.2d at 255, n. 13. It also acknowledged that the Legislature has "ultimate control over establishment of procedural rules of court." Id. at 255; see also Gov't Servs., 368 S.W.2d at 563. It further stated that the Legislature has "complete authority to pass any law regulating the means, manner, and mode of assertion of any of [a defendant's] rights in the court," so long as its exercise of its powers does not so interfere with another branch that the other branch cannot effectively exercise its own constitutionally assigned powers. See Meshell, 739 S.W.2d at 255 (quoting Johnson v. State, 42 Tex.Crim. 87, 58 S.W. 60, 61 (1900)).
The court also held, however, that, under Article II, section 1, "the Legislature may not remove or abridge a district or county attorney's exclusive prosecutorial function, unless authorized by an express constitutional provision." 739 S.W.2d 246, 254-55 (Tex.Crim.App.1987). The Court reasoned that a prerequisite to the exercise of legislative authority to establish rules of court, which then was provided by Article V, section 25 of the Texas Constitution (since repealed), was the existence of a right for which the Legislature could provide procedural guidelines.[8]Id. at 255. *157 If it were otherwise, it reasoned, "the procedural legislation would itself create a substantive `right,' and exceed the grant of power in Article V, § 25, supra, thereby encroaching upon another department." Id. The Court stated that in enacting article 32A.02 of the Texas Code of Criminal Procedure, the Speedy Trial Act, the Legislature had "attempted to provide procedural guidelines for statutory enforcement of a defendant's constitutional right to a speedy trial," thus apparently satisfying the requirement that a right exist before a procedural guidelines could be enacted to enforce it. Id. However, the provisions of the Act were not actually "directed at providing procedural guidelines for the speedy commencement of trial," but at "speeding the prosecutor's preparation and ultimate readiness for trial."[9]Id. In other words, the Act's provisions were not directed at achieving the stated purpose of the Act but at the performance of a core judicial function, the prosecutors preparation for trial.
The Court pointed out that article 32A.02 failed to incorporate considerations directly related to the speedy commencement of trial, at which the speedy trial clauses in the Texas and United States constitutions were directed.[10]Id. at 256; see Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 2192-93, 33 L.Ed.2d 101 (1972) (holding that in speedy trial claim, court considers (1) length of delay; (2) reasons for delay; (3) timeliness of assertion of right to speedy trial; and (4) any prejudice caused by delay). Nor did article 32A.02 take into account the reason for the delay between accusation and trial, whether the accused asserted the right to a speedy trial, or whether denial of the right worked to his prejudice. Meshell, 739 S.W.2d at 256. Because article 32A.02 required that prosecutions be set aside, with prejudice, after 120 days, without due regard for the constitutional objective of the speedy trial clauses or the constitutionally relevant factors in meeting that objective, the court held the Act to be an impermissible encroachment upon prosecutorial discretion, in violation of the separation of powers provision in the Constitution. Id. at 257.
DFPS acknowledges that the Texas Constitution provides for legislative control over the establishment of procedural rules of court. See Meshell, 739 S.W.2d at 255; Gov't Servs. Ins. Underwriters v. Jones, 368 S.W.2d 560, 563 (Tex.1963). However, in this case, it argues that the Legislature overstepped its bounds and that section 263.401(a)'s one-year dismissal date for termination proceedings initiated by the State was not directed at achieving the purpose of the statute but at the State's performance of its prosecutorial function, with which it unconstitutionally interfered.

3. Constitutionality of Section 263.401
Section 263.401 of the Family Code is a statute passed pursuant to the Legislature's constitutional authority to legislate, and thereby to regulate, "the means, manner, and mode of assertion" of SAPCRs seeking to terminate parental rights. See Meshell, 739 S.W.2d at 255. Under that authority, the Legislature has provided in *158 Chapter 263 of the Family Code a comprehensive statutory scheme for terminating parental rights, the purpose of which is to "facilitate permanence and stability in the lives of children subjected to [DFPS's] involvement" by ensuring a speedy resolution of child custody issues in accordance with long-standing Texas policy. See In re L.J.S., 96 S.W.3d 692, 693 (Tex.App.-Amarillo 2003, no pet.); see also Proffer v. Yates, 734 S.W.2d 671, 673 (Tex.1987) (orig.proceeding) (providing for mandamus proceedings in child custody cases and stating, "Justice demands a speedy resolution of child custody and child support issues"). The essential questions, therefore, are whether the provisions in section 263.401 further that objective and whether those provisions prevent the judicial branch from effectively exercising its core function of adjudicating termination proceedings by unduly interfering with the ability of prosecutors to prepare their cases. See Armadillo Bail Bonds, 802 S.W.2d at 239; Meshell, 739 S.W.2d at 255.

4. Purpose of Section 263.401
In 1996, by executive order, Governor George W. Bush established the Governor's Committee to Promote Adoption to discover strategies to speed up the adoption process. TEX. GOV. EXEC. Order No. GWB 96-7 (1996), reprinted in GOVERNOR'S COMMITTEE TO PROMOTE ADOPTION, FINAL REPORT. The Governor charged this committee with the task of "identifying ways to reduce legal, judicial and administrative barriers to adoption" for children in the custody of DFPS. GOVERNOR'S COMMITTEE TO PROMOTE ADOPTION, FINAL REPORT app. at 26. According to the data on which the Governor's Committee relied, approximately 1,400 children in the custody of DFPS were eligible for adoption as of July 31, 1996. Of these 1,400 children, about one-third had been waiting more than two years to be adopted and sixteen percent had been waiting more than three years. In addition, about 2,300 children in foster care still awaited termination of parental rights as a prerequisite for adoption eligibility. GOVERNOR'S COMMITTEE TO PROMOTE ADOPTION, FINAL REPORT at 6. The Governor's Committee made the following recommendation pertinent to this case: "For children in [DFP]S conservatorship, require concurrent planning with clearly defined responsibilities and deadlines for the birth parents and either termination of parental rights or reunification with the family within 12 months of removal."[11]Id. at 19 (emphasis added).
With the Committee's recommendation in mind,[12] the Texas Legislature established the time limitation in section 263.401 to effectuate the recommendations of the Governor's Committee that parental rights be terminated or families reunified within 12 months. See SENATE COMMITTEE REPORT, BILL ANALYSIS, Tex. S.B. 34, 75th Leg., R.S. (1997) ("The Report of the Governor's Committee to Promote Adoption has suggested various revisions to Title 5, Family Code, relating to the parent-child relationship, suits affecting the parent-child relationship, and the protection of children, in order to promote adoption in Texas. This *159 bill would amend Title 5, Family Code, to reflect the changes suggested by the Governor's Report to promote adoption."); In re Bishop, 8 S.W.3d 412, 417 (Tex.App.-Waco 1999, pet. denied).
As shown by the Governor's Committee, the recommendation of a 12-month deadline to either reunify children with their parents or terminate parental rights was viewed as a necessary step to speed up adoptions and minimize trauma to Texas children. GOVERNOR'S COMMITTEE TO PROMOTE ADOPTION, FINAL REPORT at 19. The Texas Legislature also recognized that this statutory deadline would expedite the trial of these cases to help provide a modicum of certainty for children whose family situations are subject to the outcomes in these proceedings. In re Texas Dep't of Family and Protective Servs., 210 S.W.3d 609, 614 (Tex.2006). Moreover, "[j]ustice demands a speedy resolution" in cases involving child custody. See Proffer, 734 S.W.2d at 673.
In enacting former section 263.401, the Legislature exercised its power to expedite the trial of termination of parental right cases initiated by the State to help provide certainty for children whose family situations were subject to such proceedings. Specifically, the Legislature provided that a parent may timely seek dismissal of the termination proceedings and reunion with his or her children unless a final order is rendered within a year of the date the State initiated the termination proceedings unless a statutorily provided extension is obtained. See FORMER TEX. FAM.CODE ANN. § 263.401(a), (b). The Legislature's intent in enacting the statute was to "[m]inimize trauma" to the child and to place the child "in a permanent family as quickly as possible." GOVERNOR'S COMMITTEE TO PROMOTE ADOPTION, FINAL REPORT at 19.
We conclude that in enacting the 12-month dismissal date for State-initiated termination proceedings set out in section 263.401(a) the Legislature was not attempting to speed up the prosecutor's preparation and ultimate readiness for trial, as it was with the Speedy Trial Act. See Meshell, 739 S.W.2d at 255. Rather, the Legislature was attempting to provide guidelines for assuring that Texas children in the custody of the State are either returned to their parents or adopted as quickly as possible. The statute thus furthers the state policy of facilitating permanence and stability in the lives of children subject to DFPS's involvement. See In re L.J.S., 96 S.W.3d at 693.[13]

Interference with Case Preparation
The only remaining question then is whether section 263.401 "unduly interferes" with the prosecutor's discretion as a judicial officer in the preparation of cases. See Armadillo Bail Bonds, 802 S.W.2d at 239. We conclude that section 263.401 does not unduly interfere with the prosecutor's function.
DFPS primarily relies on equating the deadline in section 263.401(a) with the deadline in the Speedy Trial Act, which was declared unconstitutional. The two statutes are distinguishable in at least two important respects.
First, the Speedy Trial Act provided that the State must be ready for trial within 120 days after commencement of a felony criminal action with no consideration given to the reasons for a speedy trial or factors that might justify delay. See Meshell, 739 S.W.2d at 256. DFPS *160 argues that, likewise, former section 263.401 "guarantees a dismissal for a moving party if the statute's deadline is not met, without focusing on any factors that are directly related to the entry of a final order" in termination proceedings.
Contrary to DFPS's characterization of the statute, however, former section 263.401 does not guarantee either party a dismissal if a final order is not rendered (not `entered,' as DFPS states) within one year from the initiation of termination proceedings. The section plainly provides that the one-year deadline for rendition of a final order can be extended by 180 days if the court "finds that continuing the appointment of the department as temporary managing conservator is in the best interest of the child." See FORMER TEX. FAM. CODE ANN. § 263.401(b). In addition, the fact that the trial court's decision to extend the case must take into consideration the best interest of the child weakens DFPS'S argument that the statute does not take into account "any factors that are directly related to the entry of a final order." See id. Moreover, if the court grants an extension, it must render an order scheduling the new date for dismissal of the suit, "make further temporary orders for the safety and welfare of the child as necessary to avoid further delay in resolving the suit," and set a final hearing date that allows the court to render a final order before the expiration of its extended jurisdiction.[14]Id. All of these requirements directly relate to the rendition of a final order as expeditiously as possible, consistent with the protection of the best interest of the child.
Additionally, section 263.403 of the Family Code, applicable when this suit was filed and still applicable, provides that, "[n]otwithstanding Section 263.401, the court may retain jurisdiction and not dismiss the suit or render a final order" if the court "finds that retaining jurisdiction under this section is in the best interest of the child." Act of May 22, 2001, 77th Leg., R.S., ch. 1090, 2001 Tex. Gen. Laws 2395, 2397 [hereinafter FORMER TEX. FAM.CODE ANN. § 263.403] (amended 2007) (current version at TEX. FAM.CODE ANN. § 263.403 (Vernon Supp.2008)) (emphasis added). Id. In such a case, however, the court must order DFPS to return the child to the parent, to continue to serve as temporary managing conservator, and "to monitor the child's placement to ensure that the child is in a safe environment." Id. If the court renders such an order, the court must include in it "specific findings regarding the grounds for the order." Id. Thus, contrary to DFPS's arguments, the fact that the trial court fails to render a final order at the one year anniversary of its initiation of termination proceedings does not equate to a "guaranteed dismissal" directed at forcing DFPS to speed up its preparation for trial. Therefore, section 263.401 does not unduly interfere with the prosecutorial function by mandating a one year dismissal date without regard to factors directly related to the entry of a final order.
Second, the Speedy Trial Act provided that if the trial had not started within 120 days of the beginning of the case, the trial court must dismiss the suit with prejudice. A dismissal with prejudice has been recognized *161 as a "remedy which necessarily causes a serious disruption in a prosecutor's ability to perform his duties by conclusively terminating the prosecution." State v. Condran, 977 S.W.2d 144, 146 (Tex.Crim.App.1998) (Keller, J., dissenting) (dissenting opinion adopted in Ex parte Young, 213 S.W.3d 327, 331 (Tex. Crim.App.2006)). Unlike the Speedy Trial Act, a dismissal in accordance with former section 263.401 is without prejudice. The fact that the dismissal is without prejudice bolsters our conclusion that section 263.401 does not unduly interfere with the prosecutor's function, as a SAPCR can be refiled.
DFPS recognizes that a dismissal order under section 263.401 is without prejudice, but it argues that it "cannot keep a child in foster care absent new facts supporting removal from the home." See In re Ruiz, 16 S.W.3d 921, 927 (Tex.App.-Waco 2000, orig. proceeding). DFPS again overstates the case. In Ruiz, the Waco Court of Appeals held that, because a dismissal under section 263.401(a) is without prejudice, DFPS may "re-file the case asserting the same ground for termination as originally alleged," but that to keep a child in foster care after dismissal of termination proceedings, it must rely on facts warranting removal that have occurred after the date the child was removed from the parent's home. Id.; accord In re M.N.G., 147 S.W.3d 521, 528 (Tex.App.-Fort Worth, 2004, pet. denied). Similarly, in the instant case, DFPS was required to show, on the basis of facts that occurred after T.R.W. was removed from his parents' custody on February 6, 2006, that returning him to his parents would endanger him. Presumably, DFPS met this burden, since the trial court awarded temporary managing conservatorship of T.R.W. to his grandparents pursuant to a Rule 11 agreement that satisfied the requirements of a final order under section 263.401(d)(2).
We conclude that DFPS has not shown that refiling the SAPCR with new facts demonstrating that returning T.A.D. to his parents would still endanger him, in compliance with section 263.403 of the Family Code, would unduly interfere with its prosecutorial function. We further conclude that DFPS has not shown that the requirement that it file a new SAPCR under Chapter 263 of the Family Code when a final order has not been rendered by the 12-month deadline in section 263.401(a) unduly interferes with its prosecutorial function.
For all the foregoing reasons, we hold that former section 263.401 does not violate the Separation of Powers Clause in the Texas Constitution.[15]

Conclusion
We affirm the judgment of the trial court.
NOTES
[1] The children have different biological mothers and fathers. The only child affected in this proceeding is T.A.D, who was 3 in June 2007. Andrea Ligouri is the mother of S.S.W., T.R.W. and T.A.D. Travis Dickensheets and Liguori have been monitored by DFPS since 1995 and were required to complete drug/alcohol assessments and follow all CPS recommendations.
[2] The record reflects that the Travis and Andrea appeared for the 9:00 a.m. trial setting, but the setting was moved to 1:00 p.m. Andrea admitted that she and Travis were informed that the trial setting had been moved to 1:00 p.m., but Travis testified that they were told "there was no longer a trial, there was going to be a hearing," for which their presence was not needed, and that he "had to get to work."
[3] On appeal, DFPS does not raise any complaints about the trial court's decision to implicitly deny its motion for extension.
[4] The trial court dismissed the proceedings pursuant to former section 263.401. Thus, we analyze DFPS's arguments in reference to the former statute.
[5] The amended version does not alter jurisdictional requirements other than to provide that the trial court must have commenced the trial on the merits before the dismissal date but that it need not have rendered a final order. See TEX. FAM.CODE ANN. § 263.401 (Vernon Supp.2008).
[6] DFPS contends that its constitutional challenge to section 263.401 was argued in its motion for new trial. Although the appellate record does not include DFPS's motion for new trial, appellees do not argue waiver. Moreover, DFPS was not required to argue that the statute was facially invalid in the trial court because a party may raise a constitutional challenge to the facial validity of a statute for the first time on appeal. Toma v. State, 126 S.W.3d 528, 529 (Tex.App.-Houston [1st Dist.] 2003, pet. ref'd); see Garcia v. State, 887 S.W.2d 846, 861 (Tex.Crim.App. 1994).
[7] We note that the statute has since been amended to allow a trial to continue if the final deadline occurs during trial. See TEX. FAM.CODE ANN. § 263.401(a) (Vernon Supp. 2008).
[8] Article V, section 25, of the Texas Constitution provided:

The Supreme Court shall have power to make and establish rules of procedure not inconsistent with the laws of the State for the government of said court and the other courts of this State to expedite the dispatch of business therein.
TEX. CONST. art. V, § 25 (repealed).
[9] See Speedy Trial Act of 1977, 65th Leg., R.S., ch. 787, 1977 Tex. Gen. Laws 1970, 1970-73, repealed by, Act of May 19, 2005, 79th Leg., R.S., ch. 1019, sec. 2, 2005 Tex. Gen. Laws 3464, 3464.
[10] U.S. CONST. AMEND. VI; TEXAS CONST., art. I, § 10.
[11] Prior to January 1, 1998, if DFPS had been appointed temporary managing conservator of a child, the court would "establish a date for dismissal of the suit not later than the second anniversary of the date of the hearing, unless the court has rendered a final order before the dismissal date." Act of May 28, 1997, 75th Leg., R.S., ch. 603, § 14, 1997 Tex. Gen. Laws 2108, 2126.
[12] In 1996, the Texas Sunset Advisory Commission also recommended that there should be a "12-month deadline for [DFPS] to seek termination of parental rights or return a child to the family." TEX. SUNSET ADVISORY COMM'N. DEP'T OF PROTECTIVE AND REGULATORY SERVS., Staff Report 37 (1996).
[13] We note that in 2001, the Legislature acknowledged that the 12-month deadline "has helped to reduce the time children spend in foster care awaiting a trial court decision." HOUSE COMM. ON JUVENILE JUSTICE & FAMILY ISSUES, BILL ANALYSIS, Tex. H.B. 2249, 77th Leg., R.S. (2001).
[14] Moreover, former section 263.402 of the Family Code, like the current version, provided, "A party to a suit under [Chapter 263] who fails to make a timely motion to dismiss the suit or to make a motion requesting the court to render a final order before the deadline for dismissal under this subchapter waives the right to object to the court's failure to dismiss the suit." See Act of May 22, 2001, 77th Leg., R.S., ch. 1090, 2001 Tex. Gen. Laws 2395, 2396-97 [hereinafter FORMER TEX. FAM.CODE ANN. § 263.402] (amended 2007) (current version at TEX. FAM.CODE ANN. § 63.402(b) (Vernon Supp.2008))
[15] The Amarillo Court of Appeals addressed this issue in In re L.L., 65 S.W.3d 194, 196-197 (Tex.App.-Amarillo 2001, pet. dismissed). The court of appeals stated that DFPS was a creature of the legislature and it has the power to impose time limitations as used in section 263.401. Id. at 196. In finding that the section did not violate the separation of powers clause, the court held that "Texas courts do not dictate to the Legislature how it should discharge its duty" and that to ignore the words in the statute would be "an unwarranted judicial disregard for and avoidance of a clear legislative mandate, which we cannot do." Id. at 197. Although we agree with the opinion's propositions, we believe that further analysis is necessary, which we have set out above.