Luke Enoch EDWARDS, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–98–00766–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Dec. 2, 1999.

Bob Wicoff, Houston, for appellant.

Barbara Anne Drumheller, Houston, for appellee.

Panel consists of Chief Justice MURPHY and Justices ANDERSON and HUDSON.

## OPINION

JOHN S. ANDERSON, Justice.

Appellant, Luke Enoch Edwards (Edwards), was convicted by a jury of aggravated robbery. Following his conviction, the jury sentenced him to 20 years incarceration in Texas Department of Criminal Justice, Institutional Division.[1] In three

1. This sentence was enhanced by the defendant's prior conviction of felony escape.

points of error Edwards challenges the judgment of the trial court arguing the evidence is legally and factually insufficient to support the jury's finding that Edwards used or exhibited a firearm; that the trial judge erred in instructing the jury regarding good conduct time because as an aggravated robbery defendant he is not eligible for good conduct time; and that the statute requiring the trial judge to instruct the jury on good conduct time is unconstitutional. We affirm.

## I.

### Factual Background

The uncontroverted evidence at trial demonstrates that Edwards and two female companions robbed at gunpoint Christine Lewis (Lewis), her young son, and her mother as the family walked home from a shopping center. The evidence presented at trial further shows that while robbing the family of their Christmas presents, Edwards pointed a gun at the eleven-month-old child, telling Lewis to hand over the presents or he would kill her baby.

One issue in this appeal is whether the gun Edwards threatened the family with was a firearm. In the indictment, the state described the crime with which Edwards was charged as robbery with "a deadly weapon, to wit: a firearm." At trial, the defense attempted to show through the victims' and a co-defendant's testimony, that the gun used in the robbery was a BB gun. The prosecution and its witnesses maintained the gun used was similar to a Colt .45 handgun. The jury found Edwards guilty as charged in the indictment.

## II.

### Legal Sufficiency

■ By his first point of error Edwards complains that the evidence does not support his conviction for aggravated robbery because the evidence is legally and factual-ly insufficient to show that a firearm was used. In reviewing legal sufficiency, appellate courts are to view the evidence in the light most favorable to the prosecution, overturning the verdict only if a rational trier of fact could not have found all the elements of the offense beyond a reasonable doubt. *See Clewis v. State*, 922 S.W.2d 126, 132 (Tex.Crim.App.1996).

■ Although a person commits the first degree felony of aggravated robbery under TEX. PEN.CODE ANN. § 29.03 (Vernon 1994) if he uses or exhibits a deadly weapon in the commission of a robbery, when the State alleges unnecessary matter which is descriptive of the essential elements of the crime, it must prove the descriptive matter as alleged. *See Gomez v. State*, 685 S.W.2d 333, 336 (Tex.Crim. App.1985). Thus, when the State alleges in an indictment for aggravated robbery that the deadly weapon used by the defendant was a firearm, as it did in this case, it is required to prove use of a firearm beyond a reasonable doubt. *See id.*

A "firearm" means any device designed, made, or adapted to expel a projectile through a barrel by using the energy generated by an explosion or burning substance or any device readily convertible to that use. TEX. PEN.CODE ANN. § 46.01(3) (Vernon 1994). A gun, however, may be a much broader term than "firearm" when taken out of context, and may include such non-lethal instruments as BB guns, blow guns, pop guns, and grease guns. *See O'Briant v. State*, 556 S.W.2d 333, 335–36 (Tex.Crim.App.1977); *see also Benavides v. State*, 763 S.W.2d 587, 588–89 (Tex. App.—Corpus Christi 1988, pet. ref'd). Here, appellant's threatening the victims with the gun in itself suggests that it is a firearm rather than merely a gun of the non-lethal variety. *See id.* Both Lewis and her mother testified that Edwards used "a gun" during the robbery and that the gun used resembled a Colt .45 handgun, rather than a BB gun. Lewis further stated she was familiar with guns because

she had been a security guard for three years.

■ The factfinder may draw reasonable inferences and make reasonable deductions from the evidence as presented to it within the context of the crime. *See Goodin v. State*, 750 S.W.2d 857, 859 (Tex. App.—Corpus Christi 1988, pet. ref'd). The record demonstrates the jury made reasonable deductions from the evidence. Based on the trial testimony, the jury found Edwards "guilty as charged in the indictment." In other words, the jury believed the testimony of Lewis and her mother and found Edwards guilty of robbing the women with a firearm. Viewing the evidence in the light most favorable to the prosecution, we hold a rational trier of fact could have found the gun used in the robbery was a firearm beyond a reasonable doubt. *See Clewis*, 922 S.W.2d at 132. Accordingly, we hold the evidence legally sufficient to show that a firearm was used in the commission of the robbery.

## III.

### Factual Sufficiency

Edwards also alleges the evidence is factually insufficient to support the jury's "firearm" finding. To review the factual sufficiency of the evidence, the court of appeals views all the evidence without the prism of "in the light most favorable to the prosecution" and sets aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See id* at 129. Here, the defense called Edwards's co-defendant, Jessica Gonzales, to the stand. In Edwards's defense, Gonzales stated while she pointed a knife at one of the victims and demanded the victim give her the presents, Edwards held a BB gun on the other. On cross-examination, Gonzales admitted she and Edwards had previously been married and, at the time of the robbery, were considering becoming romantically involved again. Gonzales also admitted

Edwards had given her money to help with her children.

In addition to Gonzales's testimony, the defense presented the testimony of Gonzales's step-father, Roy Hernandez. Hernandez testified that he owned a BB gun that he kept at Jessica Gonzales's house; however, he could not testify from personal knowledge that the BB gun was the weapon used in the robbery. The jury heard Hernandez's and Gonzales's testimony and that of the victims and found that Edwards used a firearm, rather than a BB gun, during the robbery. The jury, as the trier of fact, resolves any conflicts in the evidence, evaluates the credibility of the witnesses, and determines the weight to be given to any particular evidence. *See Ruiz v. State*, 891 S.W.2d 302, 304 (Tex. App.—San Antonio 1994, pet. ref'd). Viewing all of the evidence on the firearm finding, we cannot say the jury's finding that Edwards used a firearm is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Clewis*, 922 S.W.2d at 129. Accordingly, we overrule Edwards's first point of error.

## IV.

### Good Conduct Time Instruction

■ In his second point of error, Edwards complains that the trial judge erred by instructing the jurors about the award of good conduct time and its effect on sentencing because he was not eligible for good conduct time based on the "aggravated" status of his crime. We disagree.

A judge has no discretion to ignore statutory requirements. *See McGee v. State*, 711 S.W.2d 257 (Tex.Crim.App.1986) (holding the trial court was bound to comply with the mandatory language of the statute). Thus, we review the punishment phase jury charge de novo to determine whether the trial judge instructed the jury correctly.

The instruction provided to the jury by the trial court below is specifically mandat-

ed by the Texas Code of Criminal Procedure.[2] *See Cormier v. State*, 955 S.W.2d 161, 164 (Tex.App.—Austin 1997, no pet.) (noting the instruction in Article 37.07, section 4(a) is mandatory). This is a universal charge applicable to all non-capital felonies which includes aggravated offenses under Criminal Procedure article 42.12, section 3(g), and therefore it is applicable here. The trial judge is required by article 37.07, section 4(a), a state law, to give this charge in the penalty phase of a felony case, as in the case *sub judice* involving aggravated robbery. Accordingly, we hold no error occurs where the trial court properly follows a Texas statute. Edwards's second point of error is overruled.

## V.

### Constitutional Challenge

Edwards's third point of error challenges the constitutionality of Article 37.07, § 4(a) which requires the trial court to inform the jury concerning the effects of good time on sentencing regardless of whether the defendant is eligible for the application of good time. *See* TEX.CODE CRIM. PROC. ANN. Art. 37.07, § 4(a).

2. Article 37.07, § 4(a) of the Code of Criminal Procedure provides as follows:

"In the penalty phase of the trial of a felony case in which the punishment is to be assessed by the jury rather than the court, if the offense of which the jury has found the defendant guilty is [aggravated robbery], unless the defendant has been convicted of a capital felony, the court *shall* charge the jury in writing as follows:

"*Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn time off the period of incarceration imposed through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.*

"It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.

"Under the law applicable in this case, if the defendant is sentenced to a term of

### A. Separation of Powers

We first consider whether the statutory requirement to give such a charge violates the separation of powers provision of the Texas Constitution. *See* TEX. CONST. Art. II, § 1. Edwards relies on *Armadillo Bail Bonds v. State*, 802 S.W.2d 237 (Tex. Crim.App.1990) to support his argument that article 37.07, section 4(a) violates the Texas Constitutional requirement of separation of powers because in that statute the "Legislature of this State has encroached upon a power solely belonging to the judiciary, by requiring a trial judge in situations such as this one to instruct juries in a manner that is erroneous and harmful to defendants." However, *Armadillo* involved a statutory determination that a final judgment declaring bail bond forfeiture could not be entered until 18 months after the date the forfeiture was entered. *Id.* at 238, 241. The court of criminal appeals held that the statute was unconstitutional because it unduly interfered with the courts' power to enter a final judgment. *Id.* at 241. The court noted that if such a statute were held to be

imprisonment, he will not become eligible for parole until the actual time served equals one-half of the sentence imposed or 30 years, whichever is less, without consideration of any good conduct time he may earn. If the defendant is sentenced to a term of less than four years, he must serve at least two years before he is eligible for parole. Eligibility for parole does not guarantee that parole will be granted.

"It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

"You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant." TEX.CODE CRIM. PROC. ANN. Art. 37.07, § 4(a) (Vernon Supp.1999) (emphasis added).

a valid exercise of the Legislature's power, then nothing would prevent the Legislature from imposing an interminable delay in imposing final judgment. *See id.* at 241. The rationale of *Armadillo* is not applicable to the case *sub judice* for the reasons set forth below.

First, the separation of powers provision of the Texas Constitution may be violated in one of two ways: (1) when one branch of government assumes, or is delegated,.to whatever degree, a power that is more "properly attached" to another branch, and (2) when one branch unduly interferes with another branch such that the other branch cannot effectively exercise its constitutionally assigned powers. *See State v. Williams,* 938 S.W.2d 456, 458 (Tex.Crim.App.1997). Here, Edwards's challenge to the application of article 37.07, section 4(a) relies on the latter situation.

The *Armadillo* court described the undue interference test as follows:

> The undue interference test takes the middle ground between those who would seek rigid compartmentalization and those who would find no separation of powers violation until one branch completely disrupted another branch's ability to function. The rigid compartmentalization theory undermines the efficiency of government and undervalues the availability of checks and balances. The other extreme looks only for the completed coup and underestimates the incremental effect of interbranch intrusions.

*See Armadillo,* 802 S.W.2d at 239.

In *Armadillo* the court held the separation of powers principle necessarily contemplates a zone of judicial power which must be free of legislative interference, and the statute in question there intruded into that zone. *See id.* at 241. The court explained that the core of judicial power conferred upon trial courts by the Texas Constitution included: the power (1) to hear evidence; (2) to decide issues of fact raised by the pleadings: (3) to decide relevant questions of law; (4) to enter a final judgment on the facts and the law; and (5) to execute the final judgment or sentence. *See* 802 S.W.2d at 239–40. The court concluded that the statute requiring an eighteen month delay before the entry of a final judgment directly conflicted with the judicial power conferred on the courts to "enter a final judgment on the facts and the law," and thus constituted an undue interference with the Judiciary's effective exercise of its constitutionally assigned powers. *See id.* at 241. In contrast to the facts in *Armadillo,* the issue here is whether the provisions of article 37.07, section 4(a) unduly interfere with the court's ability to submit a jury charge in the punishment stage of a criminal trial that contains no reference to the award of good conduct time when such is not available due to the aggravated nature of the offense. However, the proper wording of a jury charge is not on the above list describing the judicial power conferred on the trial courts by the Texas Constitution. Therefore, article 37.07, section 4(a) does not, in our view, unduly interfere with the Judiciary's constitutionally assigned power.

Second, in 1989 the Texas Constitution was duly amended by the people of the State of Texas to specifically grant to the Legislature the authority to "enact parole laws and laws that require or permit courts to inform juries about the effect of good conduct time and eligibility for parole or mandatory supervision on the period of incarceration served by a defendant convicted of a criminal offense." Tex. Const. Art. IV, § 11(a). *See Edwards v. State,* 807 S.W.2d 338, 341 (Tex.App.—Houston [14th Dist.] 1991, pet ref'd); *see also Jimenez v. State,* 992 S.W.2d 633, 637–39 (Tex. App.—Houston [1st Dist.] 1999, pet. granted). When the Legislature reenacted article 37.07, section 4(a) in 1989 pursuant to the authority granted by Article IV, § 11, the Legislature did not usurp any of Edwards's rights. The people had, through a constitutional amendment, authorized the jury instruction given in this case. *See*

*Edwards,* 807 S.W.2d at 341. Accordingly, we hold that article 37.07, section 4(a) of the Texas Code of Criminal Procedure does not violate the separation of powers provision of the Texas Constitution.

### B. Due Course of Law/Due Process

■ We turn now to Edwards's due course of law and due process challenges. Edwards contends that he was denied due process and due course of law because article 37.07, section 4(a) directly misleads "a jury into thinking that ' good conduct time could reduce the amount of time a defendant might serve" for an aggravated robbery. The good conduct time and parole instruction given in this case was upheld against a due course of law challenge in a case tried after reenactment of that statute pursuant to the constitutional amendment referenced above. *See Oakley v. State,* 830 S.W.2d 107 (Tex.Crim.App. 1992). The court held that the constitutional amendment removed the Texas Constitution due course of law constraints that plagued the former article 37.07, section 4. *Id.* at 111. In a companion case, the court held that the good conduct time and parole instruction does not violate federal due process. *See Muhammad v. State,* 830 S.W.2d 953, 956 (Tex.Crim.App.1992).

Further, the language of the charge itself is instructive. The "good conduct time" and "parole" portions of the mandatory charge are stated generally and in terms of possibilities, not certainties. *See Martinez v. State,* 969 S.W.2d 497, 500 (Tex.App.—Austin 1998, no pet.). By contrast, the charge also contains language that speaks of certainties rather than possibilities: "if the defendant is sentenced to a term of imprisonment, he *will not become* eligible for parole until the actual time served equals one-half of the sentence imposed ... without consideration of good conduct time." *See* Tex.Code Crim. Proc. Ann. Art. 37.07 § 4(a) (emphasis added).

Considering the instructions given as a whole, we are not persuaded the jury charge mandated by article 37.07, section 4(a) violated Edwards's due course of law and due process rights. The jury first was told, in accordance with article 37.07, section 4(a), that the appellant may earn time off the period of incarceration imposed through the award of good conduct time. The instruction correctly described the calculation of appellant's parole eligibility, and specifically informed the jury that good conduct time would not be considered in that calculation. Finally, the jury was warned that the award of good conduct time cannot be predicted and was told not to consider the extent to which good conduct time might be awarded to appellant. *See Hyde v. State,* 970 S.W.2d 81,89–90 (Tex.App.-Austin 1998, pet. ref'd). For all of the above reasons, we overrule Edwards's third point of error.

Accordingly, we affirm the judgment of the trial court.