ACCEPTED
01-14-00649-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
1/15/2015 1:32:05 PM
CHRISTOPHER PRINE
CLERK

No 01-14-00649-CR

IN THE

COURT OF APPEALS

FIRST JUDICIAL DISTRICT

HOUSTON, TEXAS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

1/15/2015 1:32:05 PM

CHRISTOPHER A. PRINE
Clerk

JOHN ANDREW GARCIA,

Appellant

V.

STATE OF TEXAS,

Appellee

ON APPEAL IN CAUSE NO. 73555

412TH JUDICIAL DISTRICT COURT, BRAZORIA COUNTY, TEXAS

HONORABLE W. EDWIN DENMAN, JUDGE PRESIDING

**BRIEF FOR THE APPELLANT**

KEITH G. ALLEN
Law Offices of Keith G. Allen, PLLC
2360 CR 94, Suite 106
Pearland, TX  77584
Telephone: 832-230-0075
Fax: 832-413-5896
Bar No. 01043550

ATTORNEY FOR APPELLANT          Oral Argument Is Requested
DATE:   January 15, 2015

No 01-14-00649-CR

IN THE

| 412TH DISTRICT COURT | § | COURT OF APPEALS |
| OF | § | FIRST DISTRICT |
| BRAZORIA COUNTY, TEXAS | § | HOUSTON, TEXAS |

JOHN ANDREW GARCIA,
Appellant

V.

STATE OF TEXAS,
Appellee

---

**BRIEF FOR THE APPELLANT**

---

**TO THE HONORABLE JUSTICES OF THE COURT OF APPEALS:**

JOHN ANDREW GARCIA, the defendant in Cause No. 73555 in the 412TH Judicial District Court of Brazoria County, Texas, respectfully submits this brief and respectfully shows the court the following:

2

# SUBJECT INDEX

Parties to the Case ……………………………...………………………… 4

Index of Authorities ……………………..…………...………………… 5

Statement of the Case ……………….…………….. …….…………… 7

Statement of Facts …………………..………………………………… 7

Summary of the Argument …………………………..…………………….. 13

Appellant's Point of Error One ………………..…………………………… 13

*There was insufficient evidence to support the jury's verdict.*

Argument ................................................................................... 13

Appellant's Point of Error Two ………………..………………………… 19

*Appellant did not receive effective assistance of counsel at the trial court level.*

Argument ................................................................................... 20

Conclusion ................................................................................ 23

Prayer …………………………………………………………….....… 23

Certificate of Compliance ……………………..………………………… 24

Certificate of Service ……………………………..………………………... 24

# PARTIES TO THE CASE

APPELLANT:          JOHN ANDREW GARCIA

Attorney for Appellant at Trial:
         Name:       Bill Leathers
         Address:    608 N. Front St.
                      Angleton, TX 77515
                      Telephone: 979-848-1700

Attorney for Appellant on Appeal:
         Name:       Keith G. Allen
         Address:    Law Offices of Keith G. Allen, PLLC
                      2360 CR 94, Suite 106
                      Pearland, TX  77584
                      Telephone: 832-230-0075
                      Fax: 832-413-5896

APPELLEE:           STATE OF TEXAS

Attorneys for the State at Trial:
         Name:       Chase Clayton and Kurt Sistrunk
                      Assistant Criminal District Attorney
         Address:    Brazoria County Courthouse
                      111 E. Locust, Room 408A
                      Angleton, TX 77515
                      Telephone: 979-864-1230
                      Fax: 979-864-1525

Attorney for the State on Appeal:
         Name:       Jeri Yenne
                      Brazoria County Criminal District Attorney
         Address:    Brazoria County Courthouse
                      111 E. Locust, Room 408A
                      Angleton, TX 77515
                      Telephone: 979-864-1230
                      Fax: 979-864-1525

# INDEX OF AUTHORITIES

**Cases**

*Brooks v. State*, 323 S.W.3d 893 (Tex.Crim.App. 2010) …………...……..……. 15

*Brown v. State*, 212 S.W.3d 851 (Tex.App.-Houston[1st Dist.] 2007),

    *pet. ref'd*, *cert. denied,* 552 U.S. 1151 (2008) …………………..……. 16,17

*Charleston v. State*, 33 S.W.3d 96 (Tex.App.-Texarkana 2000, *pet. ref'd*) …..…. 16

*Cuyler v. Sullivan*, 446 U.S. 335 (1980) …………………..………………….. 20

*Edwards v. State,* 10 S.W.3d 699 (Tex.App.-Houston [14th Dist.] 1999),

    *pet. dism'd, improvidently granted* 67 S.W.3d 228 (Tex.Crim.App.2002) .. 17

*Ex parte Felton*, 815 S.W.2d 733 (Tex.Crim.App. 1991) …..………………….... 20

*Gomez v. State,* 685 S.W.2d 333 (Tex.Crim.App. 1985) …..………..…….…..… 16

*Gross v. State*, 380 S.W.3d 181, 188 (Tex.Crim.App. 2012) ………..….……… 19

*Hernandez v. State*, 726 S.W. 2d 53 (Tex.Crim.App. 1986) ………….…….…… 21

*Hooper v. State,* 214 S.W.3d 9, 15 (Tex.Crim.App. 2007) ………………..…..… 19

*In the Matter of S.B.*, 117 S.W.3d 443 (Tex. App.–Fort Worth 2003, *no pet*.) ….. 15

*Jackson v. Virginia,* 443 U.S. 307 (1979) ……….…………………….……... 14,15

*Johnson v. State*, 169 S.W.3d 223 (Tex.Crim.App. 2005),

    *cert. denied*, 546 U.S. 1181 (2006) ………………...………....…….. 20

*McMann v. Richardson*, 397 U.S. 759 (1970) ………………….……..….……… 20

*Morales v. State,* 633 S.W.2d 866 (Tex.Crim.App.1982) ………………….…….. 16

*Muniz v. State,* 851 S.W.2d 238 (Tex.Crim.App.1993),

   *cert. denied,* 510 U.S. 837 (1993) …………………………….……… 15

*Powell v. Alabama*, 287 U.S. 45 (1932) ……………….…………...…...…… 20

*Robinson v. State*, 16 S.W.3d 808 (Tex.Crim.App. 2000) ………..…..………… 20

*Sanders v. State,* 119 S.W.3d 818 (Tex.Crim.App. 2003) …………..………..... 15

*Strickland v. Washington*, 466 U.S. 668 (1984) ………………..…..………… 20,21

*Tucker v. State*, 274 S.W.3d 688 (Tex.Crim.App. 2008) ………..……..……….. 16

## Constitutions

U.S Const. Amends. VI and XIV …………………………………..…..…… 20

Tex. Const. art. I, sec 10 …………………………….…..……….............…… 20

## Statutes and Rules

Tex. Penal Code sec. 22.01(Vernon 2011) ………………….…..……..…….. 15

Tex. Penal Code sec. 22.02 (Vernon 2011) …………………………………..... 16

Tex. Penal Code sec. 1.07(a)(17) (Vernon 2011) ………………..…..……….…16

## STATEMENT OF THE CASE

Appellant, John Garcia, was charged by indictment with Aggravated Assault alleged to have occurred on or about June 19, 2013, by intentionally, knowingly, or recklessly causing bodily injury to Rene Arredondo with a deadly weapon, namely a wrench or a hard metal object. (CR1 at 5). On July 30, 2014, a jury found the defendant guilty of Aggravated Assault as alleged in the indictment and the next day sentenced him to 10 years confinement in the penitentiary. (CR1 at 23&31). Notice of Appeal and a Motion for New Trial were then filed by trial counsel on July 31, 2014. (CR1 at 32&33). Appellant's Motion for New Trial was later denied by the trial court after a hearing on September 15, 2014. (CR1 at 53).

## STATEMENT OF FACTS

The state's first witness at trial was Rene Arredondo. (RR3 at 21). Rene testified that he and his brother, Dion Trevino, were taking a gas tank out of a truck to sell for scrape when Tim approached them asking for the twenty-five dollars that Rene owed him. Rene told Tim that he would have the money as soon as he scraped the truck. (RR3 at 24). Rene owed Tim money for helping him build a fence. (RR3 at 23). Tim then left but came back later. (RR3 at 25). According to Rene, the defendant, who is also known as John-o or Chano, also came over. (RR3 at 26,38,46). The defendant and Rene's brother, Dion, then got into an argument. (RR3 at 26). The defendant then left and went to his house. (RR3 at 26&27). The

7

defendant then came back outside and he and Dion began arguing again after Rene and Dion went over the defendant's house. (RR3 at 27). It was loud and more people started to show up including Rene's wife. (RR3 at 28&30). Rene said he turned to leave to continue working on the truck and was "hit with some object in the face." (RR3 at 33). He said that he was hit on the right side of the face and did not see it coming. (RR3 at 34). However, he later said that he was hit in the front of his mouth or "between the side and the front." (RR3 at 68 & 70). Rene said that it was a hard piece of metal that hit him even though he admitted that he never saw the object that hit him. (RR3 at 35,42&59). Rene also testified that he thought that it was the defendant who hit him because the defendant was standing behind him. (RR3 at 37). However, Rene admitted that he did not see who hit him and he never saw anything in the defendant's hand. (RR3 at 37-38,59,60). In addition, Rene stated that he did not have a disagreement with the defendant that day and before he was hit, the defendant never made any threatening moves toward him. (RR3 at 63-64). Rene testified that his injuries consisted of a fractured jaw and loose teeth, but that he did not actually lose any teeth. (RR3 at 45). No medical records were offered at trial. (RR3 at 75). Rene also testified that he is a convicted felon who has been to prison, that he has a felony pending, and his prior convictions include burglary, theft, and drugs. (RR3 at 43-44). Rene also testified that the defendant told him that he would shoot him if he testified against him. (RR3 at 55).

The state's next witness was Rene's wife, Jaclyn Sambrano. (RR3 at 76). She testified that Rene and Dion had been working on a truck. (RR3 a 79). She later heard arguing from across the street between Rene, Dion, Tim and the Defendant. (RR3 at 79). So, she then went across the street to the defendant's place to where they were arguing. (RR3 at 81). When she went across the street, the defendant was standing on his stairway. (RR3 at 82). According to Jaclyn, things seemed to be ending until Coco arrived. (RR3 at 83). At that point, things heated up again because Coco wanted to fight Dion. (RR3 at 83-84). Coco and Dion approached each other to fight, but then things calmed down again. (RR3 at 85). She, Rene, and Dion then began to walk home when she heard a hit and then saw her husband lying in the grass. (RR3 at 86). Jaclyn did not see who hit Rene, nor did she see what was used to hit Rene. (RR3 at 88&98). She did see the defendant standing there when she turned around, but she did not see anything in his hand. (RR3 at 88). She did admit that Rene could have been hit with a fist. (RR3 at 100). After Rene got hit, Dion and Tim started fighting. (RR3 at 91).

James Edwards, a police officer with the Alvin Police Department, was the next witness to testify. (RR3 at 103). On June 19, 2013, he responded to a disturbance involving multiple subjects. (RR3 at 104-105). He was directed by his sergeant to collect a wrench that was found on the ground. (RR3 at 106-107). The wrench he collected was admitted into evidence as State's Exhibit 4. (RR3 at 108).

He did testify that the wrench was capable of causing serious bodily injury. (RR3 at 108-109). However, he never saw anyone holding the wrench. (RR3 at 112).

Roger Breaux, the property and evidence technician for Alvin Police Department, also testified. (RR3 at 115). He tested the wrench and did not find any blood on the wrench. (RR3 at 119). He did not test the wrench for fingerprints. (RR3 at 120).

The state's next witness was Shannon Foley, another police officer with the Alvin Police Department. (RR3 at 121). She testified that she was dispatched to a fight in progress on June 19, 2013. (RR3 at 122). She also testified, over objection, that Rene told her that Chano had hit him with a pipe. (RR3 at 124). Even though, Rene had previously testified under oath that he never saw who or what hit him. (RR3 at 59-60). Several photos were admitted including a photo of the defendant's hand showing bruising or discoloration across his knuckles. (RR3 at 131-135). She also testified that the wrench was never checked for DNA. (RR3 at 145).

After the state rested, the defense moved for a directed verdict which was denied by the trial court. (RR3 at 149-150). The defense then called Timothy McKeel as a witness. (RR3 at 151). On June 19, 2013, he was involved in an altercation with Dion. (RR3 at 152-153). He also saw Rene push the defendant with both hands in an aggressive manner. (RR3 at 153). He then saw the defendant hit Rene on the face with a closed fist. (RR3 at 154). Rene then fell and rolled.

10

(RR3 at 154). He did not see any other involvement between the two, nor did he see a wrench, a pipe, or any type of weapon in the defendant's hand. (RR3 at 154-155).

The defendant, John Garcia, did not testify at the first stage of his trial, but he did testify at the punishment phase. (RR5 at 64). At punishment, John denied assaulting Rene with a weapon. (RR5 at 73).

The appellant also testified during his Motion for a New Trial. (RR7 at 4). He testified that he had been informed by his trial counsel of his right to testify at the guilt/innocence phase of his trial; however, he was advised not to testify and was denied the opportunity to testify. (RR7 at 6-7). The appellant testified as follows:

Q. "So he told you, you had a right to testify and advised you not to testify. Is that correct?

A. Yes, sir.

Q. Did he give you an opportunity to testify?

A. No, sir.

Q. Was the decision to testify or not to testify, was that decision made by you or made by your attorney?

A. It was made by my attorney, sir.

11

Q. And if you had it your way, you would have testified in your own defense?

A. Yes, sir, I sure would have.

Q. Did you disagree then with your attorney's decision for you not to testify?

A. Yes, sir, I did.

Q. Did your attorney tell you why he didn't want you to testify?

A. He never gave me a specific answer. He just said that he didn't think it was best that I testified." (RR7 at 6-7).

If given the opportunity to testify at the first stage of his trial, he would have told the jury that a weapon was never used. (RR7 at 7). Appellant believes that if he had been given the opportunity to testify at the first phase of his trial, the outcome of the trial would have been different. (RR7 at 8).

Appellant's trial counsel, Bill Leathers, also testified during the Motion for New Trial. (RR7 at 16). He advised the appellant not to testify based on his prior criminal history. (RR7 at 19). Trial counsel's memory was unclear about the conversation regarding whether or not appellant wanted to testify. (RR7 at 16-20). However, he recalled that appellant did not insist on testifying. (R7 at 19-20).

After the hearing, the trial court made the following ruling:

12

"Looking at the docket sheet, it appears Mr. McKeel did testify on July 29th of this year; and as I recall his testimony, Mr. Clayton, you did correctly outline the major points of what he testified to. So I do not feel that this rises to ineffective assistance. I don't think it would have caused a different outcome, even if what Mr. Garcia says is correct. So I'll deny the motion for new trial." (RR7 at 22).

## SUMMARY OF THE ARGUMENT

There was insufficient evidence produced at trial to prove beyond a reasonable doubt that a wrench or hard metal object was used to strike Rene Arredondo and therefore, no rational trier of fact could have found the defendant guilty of aggravated assault as alleged in the indictment.

In addition, the defendant was denied effective assistance of counsel by not being allowed to make his own decision as to whether or not to testify and by being deprived of his right to testify in his own defense at the guilt/innocence phase of his trial.

## APPELLANT'S POINT OF ERROR ONE

*There was insufficient evidence to support the jury's verdict.*

## ARGUMENT

In this case, appellant was charged by indictment in paragraph one with Aggravated Assault by intentionally or knowingly or recklessly causing bodily

injury to Rene Arredondo and using or exhibiting a deadly weapon, namely, a wrench, which in the manner of its use or intended use was capable of causing death or serious bodily injury by striking the said Rene Arredondo about the facial area; and in paragraph two with Aggravated Assault by intentionally or knowingly or recklessly causing bodily injury to Rene Arredondo and using or exhibiting a deadly weapon, namely, a hard metal object, which in the manner of its use or intended use was capable of causing death or serious bodily injury by striking Rene Arredondo about the facial area. (CR1 at 5). The indictment did not allege that the appellant caused "serious bodily injury" or that the object used was "unknown to the grand jury." Therefore, a jury could have only convicted the appellant of aggravated assault if they believed beyond a reasonable doubt that the appellant caused bodily injury to Rene Arredondo by striking him with a deadly weapon, specifically, a "wrench" or "hard metal object." In this case, it is not disputed that Rene Arredondo suffered bodily injury by being struck on the face. Additionally, since there was no testimony that a weapon was "exhibited," since no one saw a weapon, the only question is whether there was sufficient evidence to establish that a deadly weapon was "used," specifically, whether Rene Arredondo was struck with a "wrench" or "hard metal object."

The *Jackson v. Virginia* standard is the only standard of review that applies in determining whether the evidence is sufficient to support each element of a

14

criminal offense that the State is required to prove beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 911 (Tex.Crim.App. 2010). The standard is whether after considering all of the evidence in the light most favorable to the verdict, was a jury rationally justified in finding the Appellant guilty beyond a reasonable doubt. *Id*. at 899. Therefore, when determining the sufficiency of the evidence to support a conviction, the appellate court must view the evidence in the light most favorable to the verdict and determine if any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 319 (1979); *Sanders v. State,* 119 S.W.3d 818, 820 (Tex.Crim.App. 2003). In conducting the review, the appellate court does not engage in a second evaluation of the weight and credibility of the evidence, but ensures that the jury reached a rational decision. *Muniz v. State,* 851 S.W.2d 238, 246 (Tex.Crim.App.1993), *cert. denied,* 510 U.S. 837 (1993). The relevant question is not whether there was any evidence to support a conviction, but whether there was sufficient evidence to justify a rational trier of fact to find someone guilty beyond a reasonable doubt. *In the Matter of S.B*., 117 S.W.3d 443, 445 (Tex. App.–Fort Worth 2003, *no pet*.), citing *Jackson v. Virginia,* 443 U.S. 307, 318–19 (1979).

A person commits Aggravated Assault if the person commits an assault as defined by Texas Penal Code section 22.01 and uses or exhibits a deadly weapon

15

during the commission of the assault. Tex. Penal Code sec. 22.02(a)(2) (Vernon 2011). A person commits an assault under Texas Penal Code section 22.01(a)(1) if the person intentionally, knowingly, or recklessly causes bodily injury to another. A deadly weapon is defined as a firearm or anything manifestly designed, made or adapted for the purpose of inflicting death or serious bodily injury; or anything that in the manner of its use or intended use is capable of causing death or serious bodily injury. Tex. Penal Code sec. 1.07(a)(17) (Vernon 2011) .

A "wrench" is not per se a deadly weapon, so the state is required to prove that, in the manner of its use or intended use, it was capable of causing death or serious bodily injury. *Charleston v. State*, 33 S.W.3d 96, 99 (Tex.App.-Texarkana 2000, *pet. ref'd*). The same argument can be made for any similar "hard metal object."

The Court of Criminal Appeals has held that "even without expert testimony or a description of the weapon, the injuries suffered by the victim can by themselves be a sufficient basis for inferring that a deadly weapon was used." *Tucker v. State*, 274 S.W.3d 688, 692 (Tex.Crim.App. 2008), citing *Morales v. State,* 633 S.W.2d 866, 868–69 (Tex.Crim.App.1982). However, "when the state alleges unnecessary matters that are descriptive of the essential elements of the crime, the state must prove the descriptive matters as alleged. *Brown v. State*, 212 S.W.3d 851, 860 (Tex.App.-Houston [1st Dist.] 2007, *pet. ref'd)*, *cert. denied,* 552

U.S. 1151 (2008), citing *Gomez v. State,* 685 S.W.2d 333, 336 (Tex.Crim.App. 1985). Therefore, when the state alleges in an indictment that a particular object was used by a defendant as a deadly weapon, it is required to prove the use of that particular weapon beyond a reasonable doubt. See *Brown* at 860, citing *Edwards v. State,* 10 S.W.3d 699, 701 (Tex.App.-Houston [14th Dist.] 1999), *pet. dism'd, improvidently granted* 67 S.W.3d 228 (Tex.Crim.App. 2002).

In this case, Appellant was found guilty by a jury of aggravated assault as charged in the indictment which alleged a deadly weapon, namely, a wrench or a hard metal object. (CR1 at 23&5). However, there was insufficient evidence to support that finding. The only three witnesses to testify at the guilt/innocence stage of the trial that were present during the alleged assault were Rene Arredondo, Jaclyn Sambrano and Timothy McKeel.

Rene Arredondo testified that he thought that it was the defendant who hit him because the defendant was standing behind him. (RR3 at 37). However, Rene admitted that he did not see who hit him and he never saw anything in the defendant's hand. (RR3 at 59,60,37-38). In addition, Rene stated that he did not have a disagreement with the defendant that day and before he was hit, the defendant never made any threatening moves toward him. (RR3 at 63-64).

Jaclyn Sambrano, Rene's wife, testified that she heard a hit and then saw her husband lying in the grass. (RR3 at 86). She did not see who hit Rene, nor did she

see what was used to hit Rene. (RR3 at 98). She did admit that Rene could have been hit with a fist. (RR3 at 100).

Timothy McKeel testified that he saw Rene push the defendant with both hands in an aggressive manner. (RR3 at 153). He then saw the defendant hit Rene on the face with a closed fist. (RR3 at 154). He did not see a wrench, a pipe, or any type of weapon in the defendant's hand. (RR3 at 154-155).

With regard to testimony concerning the use of a "wrench" during the commission of the assault, a wrench was found on the ground and collected by Alvin Police Officer James Edwards. (RR3 at 106-107). However, no blood was found on the wrench and it was never tested for fingerprints or DNA. (RR3 at 119,120&145). In addition, no one testified that they ever saw the appellant holding the wrench; no one testified that Rene Arredondo was struck by the wrench; and no one testified that Rene's injuries were caused by the wrench. The state even conceded the lack of evidence concerning the use of the wrench during its closing argument by stating: "We can't tell you and no one has suggested to you that State's Exhibit 4 was the weapon that was used to inflict the injuries on Mr. Arredondo." (RR4 at 19-20).

With regard to the use of a "hard metal object," Rene did testify that he believed that it was a hard piece of metal that hit him even though he admitted that he never saw the object that hit him. (RR3 at 35,42&59). There was also testimony

admitted, over objection, by Alvin Police Officer Shannon Foley that Rene told her that he was hit with a pipe. (RR3 at 124). Even though, Rene had previously testified under oath that he never saw who or what hit him. (RR3 at 59-60). Rene could have easily been hit with a fist, a rock, a brick, or a hard wooden object such as a bat. Rene's testimony concerning the use of a hard piece of metal is no more than mere speculation on his part. "Juries are permitted to draw reasonable inferences from the evidence, but they are not permitted to draw conclusions based on speculation." *Gross v. State*, 380 S.W.3d 181, 188 (Tex.Crim.App. 2012), citing *Hooper v. State,* 214 S.W.3d 9, 15 (Tex.Crim.App. 2007). "Speculation is the mere theorizing or guessing about the possible meaning of the facts and evidence presented." *Id.* "A conclusion that is reached by speculation may not seem completely unreasonable, but it is not sufficiently based upon facts or evidence to support a conviction beyond a reasonable doubt." *Id.*

Therefore, no rational trier of fact could have found beyond a reasonable doubt that a wrench or hard metal object was used to strike Rene Arredondo. The state did not need to specifically allege a wrench or a hard metal object in the indictment, but since they did, they are bound to prove it.

## APPELLANT'S POINT OF ERROR TWO

*Appellant did not receive effective assistance of counsel at the trial court level.*

# ARGUMENT

In this case, appellant was denied effective representation of counsel by not being given the opportunity to make his own decision not to testify and by being deprived of his right to testify at trial. Therefore, the trial court should have granted appellants motion for a new trial based upon those grounds.

A Defendant in a criminal trial has the right to effective assistance of counsel. U.S Const. Amends. VI and XIV; Tex. Const. art. I, sec 10; *Powell v. Alabama*, 287 U.S. 45, 66 (1932). Trial counsel must act within the range of competence demanded of attorneys in criminal cases. *McMann v. Richardson*, 397 U.S. 759, 771 (1970). The same standards apply in evaluating the representation of retained and appointed counsel. *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980). The effectiveness of counsel is ordinarily gauged by the totality of the representation, but even a single error can constitute ineffective assistance of counsel. *Ex parte Felton*, 815 S.W.2d 733, 736 (Tex.Crim.App. 1991). In addition, a defendant in a criminal trial does not need to object at trial to counsel's ineffective representation to preserve the issue for appeal. *Robinson v. State*, 16 S.W.3d 808, 813 (Tex.Crim.App. 2000).

At trial, defense counsel shoulders the primary responsibility of informing the defendant of his right to testify and that the ultimate decision of whether to testify or not belongs to the defendant. *Johnson v. State*, 169 S.W.3d 223, 235

(Tex.Crim.App. 2005), *cert. denied*, 546 U.S. 1181 (2006). Therefore, because imparting that information is defense counsel's responsibility, *Strickland* provides the appropriate framework for addressing an allegation that the defendant's right to testify was denied by defense counsel. *Id*.

Under *Strickland*, in order to have a conviction reversed on appeal, an appellant must show that trial counsel's performance was deficient and that the deficient performance resulted in prejudice to the defendant by depriving him of a fair trial with reliable results. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The appellate court must judge trial counsel's conduct based upon the particular facts of each case. *Id*. at 690. The appellant must show that trial counsel's representation fell below an objective standard of reasonableness. *Id*. at 688. In determining ineffective assistance of counsel, the appellant must identify acts or omissions by trial counsel that were not the results of reasonable professional judgment and were outside the range of professionally competent assistance. *Id.* at 690. Ultimately, the appellant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. Reasonable probability is a probability sufficient to undermine the confidence in the outcome. *Id*. The standards announced in *Strickland* also apply to criminal cases in Texas. See *Hernandez v. State*, 726 S.W. 2d 53 (Tex.Crim.App. 1986).

In this case, at the motion for new trial, appellant testified he was informed by his trial counsel of his right to testify at the guilt/innocence phase of his trial. (RR7 at 6). However, he was advised by his attorney not to testify and was never given the opportunity to testify. (RR7 at 6). The decision not to testify was made by his defense counsel and not by the appellant. (RR7 at 6). The appellant testified that if he had it his way, he would have testified and that he disagreed with his attorney's decision for him not to testify. (RR7 at 6-7). If given the opportunity to testify at the first stage of the trial, the appellant would have told the jury that a weapon was never used. (RR7 at 7). Therefore, appellant believes that if he had been given the opportunity to testify in the first stage of the trial, the outcome would have been different. (RR7 at 8). At the hearing on the motion for a new trial, the trial court found that the appellant was not denied effective assistance of counsel because it would not have changed the outcome of the trial. (RR7 at 22). However, under the circumstances of this case, there was a reasonable probability that the result of the trial would have been different if the appellant had been allowed to testify.

A defendant's testimony can have a powerful impact on the jury. In this case, the appellant would have told the jury that he did not use a weapon to strike Rene Arredondo. Due to the lack of evidence concerning what was used to strike Rene Arredondo, the defendant's testimony would have been crucial to the jury

reaching a different decision in this matter. Neither Rene Arredondo nor his wife, Jaclyn Sambrano, saw who or what hit Rene. Rene also testified that he did not have a disagreement with the defendant that day and before he was hit, the defendant never made any threatening moves toward him. (RR3 at 63-64). Timothy McKeel testified that he saw the defendant hit Rene on the face with a closed fist and that he did not see a wrench, a pipe, or any type of weapon in the defendant's hand. (RR3 at 154-155). However, it is apparent from the jury's verdict that Timothy McKeel's testimony alone was insufficient to produce a different result. Therefore, the defendant's testimony would have been critical in influencing the jury to reach a different decision.

## **CONCLUSION**

In conclusion, there was insufficient evidence produced at trial to prove beyond a reasonable doubt that a wrench or hard metal object was used to strike Rene Arredondo. Therefore, no rational trier of fact could have found the defendant guilty of aggravated assault as alleged in the indictment. In addition, the defendant was denied effective assistance of counsel by not being allowed to make his own decision as to whether or not to testify and by being deprived of his right to testify in his own defense at the guilt/innocence phase of his trial.

## **PRAYER**

WHEREFORE, Appellant prays that appellant's points of error be sustained

and the judgment of conviction be reversed.

Respectfully submitted,

/s/ Keith G. Allen
Keith G. Allen
Attorney for Appellant
Law Offices of Keith G. Allen, PLLC
2360 CR 94, Suite 106
Pearland, TX  77584
Telephone: 832-230-0075
Fax: 832-413-5896
Keith@KGAllenLaw.com
Bar No. 01043550

## CERTIFICATE OF COMPLIANCE

I hereby certify pursuant to TRAP 9.4(i) that the preceding document contains 5059 words as determined by the word count of the computer program used to prepare this document.

/s/ Keith G. Allen
Keith G. Allen

## CERTIFICATE OF SERVICE

This is to certify that on January 15, 2015 a true and correct copy of the above and foregoing document was served on Jeri Yenne, Brazoria County District Attorney, 111 E. Locust #408A, Angleton, Texas 77515 pursuant to TRAP 9.5.

/s/ Keith G. Allen
Keith G. Allen